Brenda G. Chicharello
P.O. Box 2774
Gallup, New Mexico 87305



FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

2020 OCT 16  PM 12: 57

CLERK-ALBUQUERQUE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Brenda G. Chicharello, Plaintiff

CASE NUMBER___**20cv1070 JHR**___

V.

U.S. Department of the Interior, Defendant (s)
 Secretary of Indian Affairs, Sally Jewel
Director Bureau of Indian Affairs, Bryan Rice
Director Bureau of Indian Education, Tony Dearman
Navajo Nation Department of Dine Education
Superintendent of schools, Dr. Lewis Jr. Tommy
Assistant Superintendent, Dr. Benally, Tim
Gallup McKinley County School,
Superintendent Mike Hyatt

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C _ 1983

### A.  JURISDICTION

1) Brenda G. Chicharello, is a citizen of New Mexico who presently resides at PO Box 2774
Gallup, New Mexico

2) Defendant Mac Lean Sweeney, is a citizen of Washington, DC, and employed as Assistant
Secretary of Indian Affairs. At the time the claim(s) alleged in this complaint arose, was the
defendant acting under color of state law?
Yes_X__   No___ If your answer is "Yes", briefly explain:
The Indian Self-Determination and Education Assistance Act of **1975** (Public Law 93-638)
authorized the Secretary of the Interior, the Secretary of Health, Education, and Welfare, and
some other government agencies to enter into contracts with, and make grants directly to,
federally recognized Indian tribes

---

3) Defendant Darryl LaCounte, is a citizen of Washington, DC, and employed as Director Bureau of Indian affairs and Indian Education. At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law?

Yes_X__   No_____ If your answer is "Yes", briefly explain:

The Indian Self-Determination and Education Assistance Act of **1975** (Public Law 93-638) authorized the Secretary of the Interior, the Secretary of Health, Education, and Welfare, and some other government agencies to enter into contracts with, and make grants directly to, federally recognized Indian tribes

(Use the black of this page to furnish the above information for additional defendants.)

Jurisdiction is invoked pursuant to 28 U.S.C_1343(3), 420 U.S.C_1983. (If you wish to assert Jurisdiction under different or additional statutes, you may list them below.)

## B.   NATURE OF THE CASE

Briefly state the background of your case

### BACKGROUND

**355 F. Supp. 716 (1973)**
**Joe NATONABAH et al., Plaintiffs,**
v.
**BOARD OF EDUCATION OF the GALLUP-McKINLEY COUNTY SCHOOL DISTRICT et al., Defendants.**
Civ. No. 8925.

**United States District Court, D. New Mexico.**
February 8, 1973.

Exhibit 1  (52 pages)   A report – "THE RESPONSE TO AN EVEN CHANCE"
The Gallup-McKinley County School District as seen by the New Mexico State Department of Education

In 1975 the JOM program **became part of the Indian Self Determination and Education Assistance Act**. Under this act, Indian tribes contract the administration of JOM funds for eligible Indian Students residing within their jurisdiction.

Congress brought changes to Amend the JOM Act to enact the establishment of the Indian Education Committee into the Johnson-O' Malley Act to ensure Native American Parents involvement to create educational plan for how JOM funds will be used for the Native American Students in their School District.

XE 2/7                                      -2-

## 25 C.F.R PART 273- EDUCATION CONTRACTS UNDER JOHNSON-O-MALLEY ACT

**Subpart A- General Provisions**
**273.1 Purpose and Scope**
  (a) The purpose of the regulation in this part is to set forth the application and approval process for education contracts under the Johnson-O' Malley Act.  Such contracts shall be for the purpose of financially assistance those efforts designed to meet the specialized and unique educational needs of eligible Indian students, including programs supplemental to the regular school program and school operational support, where such support is necessary to maintain established State educational standards.

  (b) The application and approval process in this part applies specifically to contract with a State, school district, or Indian corporation.

  (c) Contracts with tribal organization for supplemental and operational support will be entered into only upon the request of an Indian tribe(s), and shall be subject to the provision of part 271 of this chapter and 41 CFR part 14H-70, except as provided in S573.11

**Subpart B – Application Process**
**273.11 Eligible applicants**
 (a) Any State, school district, tribal organization or Indian corporation is eligible to apply for contracts for supplemental or operational support programs.  For the purpose of this part, previously schools as defined in S273.2 (n) are considered tribal organization.

 **Subcontract Agreement**

Johnson-O' Malley Subcontract Agreement (Hereinafter "Subcontract") Between the Navajo Nation (Hereinafter "Nation") And Gallup McKinley County School District "Sub-Contractor")

Purpose
The Subcontractor shall provide supplemental services and instructional programs to eligible Indians students in order to meet their special and unique educational needs to pursuant to the Johnson-O' Malley ( hereinafter JOM") Act and 25 C.F.R Part 273 regulations.  The Subcontractor shall work with the Indian Education Committee to develop, approve, and implement all programs, including supplemental programs and fiscal services that are awarded under this Subcontract on a basis of maximum participation by the Indian Education Committee especially pursuant to 25 C.F.R 273.14 through 273.18.  See also 25 U.S.C 450a.  The approved JOM subcontract application, budget and educational plan are incorporated into this subcontract.

XE-2 2/78                          -3-

Indian Education Committee

25 C.F.R 273.16 vest authority in an Indian Education Committee to actively participate in the planning, developing, implementation and evaluations under this subcontract

(c.) The Indian Education Committee established under paragraph (a) of this section and its members shall establish procedures under which the Committee shall serve.  Each Committee shall file a copy of its organization documents and by-laws with the appropriate Area Director, together with a list of its officer and members as soon as practicable after the Committee is organized.

The JOM Modernization Act, **Public Law 115-404**, enacted December 31, 2018, directs the Secretary of the Interior (Secretary) to conduct an accurate and comprehensive student count for the purposes of calculating formula allocations for programs under the JOM Act and for other purposes.

CAUSE OF ACTIONS

allege that the following of my constitutional rights, privileges or immunities have been violated and the following facts form the basis for my allegations under the Fourteenth Amendment violations of Due Process of my civil liberties.  Under the 25 CFR the 273.15 Establishment of the Indian Education Committee The Bureau of Interior Federal Government Agency failed to provide the **Administrative Procedure Act (APA)** to remedy my complaint of constrictions of violations of my due process for wrongfully charge and illegally removal process of my IEC Membership.  25 U.S.C. 450 (The Indian Self-Determination and Education Assistance Act), 88 Stat. 2203, Pub.L. 93-638, Pub.L. 100-472; 102 Stat. 2285, Pub.L. 103-413.  25 U.S.C. 452 (The Johnson-O'Malley Act of April 16, 1934), 48 Stat. 596, Pub.L. 73-167; Pub.L. 103-332.

I am a Native American Parent who was elected and voted in by parents at the Tobe Turpen Elementary School located in Gallup, New Mexico.  I have been an IEC Member who served on the Indian Education Committee since 2012-2017.  The Indian Education Committee Regular Meeting on October 15, 2017 at 3:00 pm located at the Student Support Center 680 S. Boardman Gallup, NM 87301.   Agenda Item # H Removal of IEC Member
 I receive no prior notification of my removal from the IEC Officers and the Gallup McKinley Administrative Staff: Monica Yazzie, IEC President, Georgianna Desiderio, IEC Vice President, Tiffany Plummer, IEC Secretary.  Carmen Moffett, Director and Paulette White Assistant Superintendent Student Support Service.  I show up at the IEC Meeting to find that I am ambushed when it came to agenda item H the IEC President made a speech that states that I wasn't working with the IEC Officers to resolve issues.  Ms. Moffett and Ms. White administer the IEC Officers to coerce them to forcibly a vote without providing any evidence to their accusation even though IEC Members ask why and  they didn't understand the reason for a force vote to take place without discussion.

XE-2 2/78                                -4-

I question the validity of my removal since the IEC By-laws has no Removal Process of the IEC Membership in the 2017-2018 JOM GMCS Subcontract No. A15AVO was approved on June 28, 2017 at 3:00 pm in the board room.  The BY-LAWS for School Year 2017-2018 page 7 dated listed on bottom is date 04/20/17 Section 502 Complaint Process the Steps 1-4 were not followed through by IEC Officers and the GMCS Administration

(2) Supporting Facts
**Exhibit 2**- 2pgs Indian Education Committee Sunday, October 15, 2017 Agenda item H
**Exhibit 3** -14pgs Letter and emails pleading to be reinstated for no removal process in the 2017-2018 IEC By-Laws.
**Exhibit 4** - The BY-LAWS for School Year 2017-2018-page 7 Section 502 Complaint Process the Steps 1-4.
**Exhibit 5** - 1 pg letter from IEC President, Monica Yazzie denying reinstating IEC Membership

B) (1) Count II:
I have informed the Navajo Nation Johnson-O' Malley Program (NNJOM) of the wrongful actions against me and I need their help to correct the wrongful action against me.  My civil rights for due process was violated.  I did not hear back from the NNJOM and the Navajo Nation Department of Dine Education regarding my request for assistance to remedy the situation. I served as the IEC Vice President for one year and my term ended on June 30, 2020
**Exhibit 6**-2pgs Emailed June 30, 2017 at 9:11 PM- I sent email to IEC Officers regarding Ms. Moffett's complaint against IEC Member Brenda Yazzie
**Exhibit 7**-2pgs Email dated December 5, 2017 at 2:13 PM FW: Re: Confidential Letter
**Exhibit 8**-2pgs Email dated December 5, 2017 at 3:09 PM FW: Re: Confidential Letter

(2) Supporting Facts: (Include all facts you consider important, including names of person involved, places and dates.  Describe exactly how each defendant is involved.  State the facts clearly in your own words without citing authority or argument.)

I have tried every avenue to resolve the matter with the Indian Education Committee to be re-instated on the grounds that the 2017-2018 IEC BY-LAWS did not allow removal process on IEC Membership.  I sent the Contractor Navajo Nation Johnson-O' Malley numerous emails pleading my case of wrongful charge and illegally removed from the IEC.  I went to the Navajo Nation trying to plead my case of wrong actions against me and my paperwork is still sitting at the Navajo Nation Justice Department.  I finally met the Navajo Nation President at a public event, and I told him what wrongful action happen to me I have been trying to resolve the wrongful action against me by the IEC Officers and Members.

XE-2 2/78                                    -5-

The President Nez gave me his card and I did email him to try to set a meeting to resolve the matter. I tried to resolve wrongful action against me and in a final attempt I contact the Bureau of Indian Education agency that oversee the JOM Program to work out a solution from wrongful action brought against me by the IEC Officers and Members. I emailed Director, Tony Dearman and Angela Barnett. Ms. Barnett stated that BIE Could not help me. I have been looking for an attorney to represent me and when COVID happen it just delay my process to filing. I have no other choice to file Pro-se

**Exhibit 9**-1pg Email dated April 3, 2019 at 7:01 PM Re: Info-Dearman, Tony
**Exhibit 10** –3pgs Emailed dated April 4, 2019 at 10:57 AM Re: Info- Barnett, Angela
**Exhibit 11**- 1pgEmailed dated April 1, 2019 at 9:57 AM Meeting regarding JOM Membership- TO Navajo Nation President Jonathan Nez From-Brenda Chicharello
**Exhibit 12**-5 pgs Emailed dated May 16, 2018 at 7:33 PM Fw: Procurement- Brenda Chicharello Sent to the Navajo Nation Health, Education & Human Services Committee: Chair- Honorable Jonathan L. Hale and Honorable Council Delegate Amber Kanazbah Crotty

D)  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1 Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the condition of your imprisonment?
Yes___ No _X_  If your answer is "YES", describe each lawsuit.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    a)  Partied to previous lawsuit.
        Plaintiffs:_____
        Defendants:_____

    b)  Name of Court and docket number:
    c)  Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?
    d)   Issues raised:_____
    e)  Approximate date of filing lawsuit:_____
    f)  Approximate date of disposition:_____

2) I have previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part C.  Yes ____  No__X_  If your answer is "Yes" briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administration relief was not sought.

XE-2 2/78                                    -6-

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following relief: Civil damages are granted when a person is
injured or suffers a loss that stems from the wrongful or negligent actions of another party.  Civil
damages of One Hundred seventy thousand dollars for the violation of my civil liberties for no
due process granted by the Federal and State agencies.  A Native American Parent facing
uncertainty to tell the Federal and State agencies of wrongdoing bestow upon me for unjust
reasons.  The obstacles I face of getting shut down by whom I reach out for help.  I wanted my
story to be heard and what wrongs were done to me.  I do want accountability from the Federal
and State Agencies who let me fall through the cracks of the system.

_____

Signature of Attorney (if any)

Attorney's full address and telephone
number.

_Brent Chi_

_____

Signature of Petitioner

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that has read the above complaint that the information contained therein is true and correct. 28 U.S.C. Sec. 1746  18 U.S.C Sec. 1621.

Executed <u>US District Court 333 Lomas Blvd NW</u> on <u>October 14, 2020</u>.
          (Location)                      (Date)

Brenda G. Chicharello

The Parties to This Complaint

1. The Plaintiff

   Provide the information below for each plaintiff named in the complaint.
   Name: Brenda G. Chicharello
   Address: PO BOX 2774 Gallup, New Mexico 87305
   County: McKinley County
   Telephone Number: (505) 713-8858  (505) 409-1760
   E-Mail Address: brenchic_99@yahoo.com

B. The Defendants

Defendant No.1
   Name: Sally Jewel
   Job or Title: Secretary of Indian Affairs
   Address: Department of Interior
              1849 C Street, N.W
              Washington, D.C. 20240
              MS-4660-MIB
   County: District of Columbia
   Telephone Number:
   E-Mail Address:

Defendant No. 2
   Name: Bryan Rice
   Job or Title: Director Bureau of Indian Affairs
   Address: Department of the Interior
              1849 C Street, N.W
              MS-4606
              Washington, D.C. 20240
   County: District of Columbia
   Telephone Number: (202) 208-5116
   E-Mail Address:

Defendant No.3

Name: Tony Dearman
Job or Title: Director Bureau of Indian Education
Address: Department of Interior
        1849 C Street, N.W
        Washington, D.C. 20240
        MS-4660-MIB
County: District of Columbia
Telephone Number: (202) 208-6123
E-Mail Address: tony.dearman @bie.edu

Defendant Tony Dearman is a citizen of Washington, DC, and employed as Director Bureau of Indian Education. At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law?
Yes _X___    No_____ If your answer is "Yes", briefly explain:

The Bureau of Indian Education (BIE) serves as the principal government agency in upholding the United States' educational obligations to Indian tribes and their eligible Indian students. As stated in Title 25 CFR part 32.2, BIE's mission is to provide quality education

Defendant No.4
    Name: Dr. Tommy Lewis, Jr
    Job or Title: Superintendent of Schools
    Address: Navajo Nation Department of Dine' Education
        PO BOX 670
        Window Rock, AZ 86515

    County: Apache County
    Telephone Number: (928) 871-7475
    E-Mail Address: tommylewis@nndode.org

Dr. Tommy Lewis, Jr is a citizen of Window Rock, Arizona, and is employed as    Navajo Nation Department of Dine Education Window Rock, Arizona. At the time the claim (s) Superintendent of schools
alleged in this complaint arose, was this defendant acting under color of state.
Yes _X___    No_____    If your answer id "Yes", briefly explain:

Under the Indian Self-determination Act allows tribes to self-govern by the contracts and grants.  The Navajo Nation Department of Dine Education oversee the Johnson-O' Malley Program.

Defendant No.5
   Name: Tim Benally
   Job or Title: Assistant Superintendent
   Address: Navajo Nation Department of Dine' Education
        PO BOX 670
        Window Rock, AZ 86515

   County: Apache County
   Telephone Number: (928) 871-7475
   E-Mail Address: timbenally@navajo-nsn.gov

Dr. Tim Benally is a citizen of Window Rock, Arizona, and is employed as     Navajo Nation Department of Dine Education Window Rock, Arizona. At the time the claim (s) Assistant Superintendent
alleged in this complaint arose, was this defendant acting under color of state.
Yes _X_   No___   If your answer id "Yes", briefly explain:
Under the Indian Self-determination Act allows tribes to self-govern by the Contracts and Grants.  The Navajo Nation Department of Dine Education oversee the Johnson-O' Malley Program.

   Defendant No.6
    Name: Mike Hyatt
    Job or Title: Superintendent
    Address: Gallup McKinley County School
        640 Boardman
        Gallup, NM  87301

    County: McKinley County
    Telephone Number: (505) 721-1000
    E-Mail Address: mhyatt@gmcs.org

Mike Hyatt is a citizen of Gallup, New Mexico, and is employed as    Gallup McKinley County School, New Mexico. At the time the claim (s) Superintendent
alleged in this complaint arose, was this defendant acting under color of state.
Yes _X_   No___   If your answer id "Yes", briefly explain:
The Subcontractor shall provide supplemental services and instructional programs to eligible Indians students in order to meet their special and unique educational needs to pursuant to the Johnson-O' Malley ( hereinafter JOM") Act and 25 C.F.R Part 273 regulations.

U.S. DEPARTMENT OF HEALTH, EDUCATION
& WELFARE
OFFICE OF EDUCATION
THIS DOCUMENT HAS BEEN REPRODUCED
EXACTLY AS RECEIVED FROM THE PERSON OR
ORGANIZATION ORIGINATING IT. POINTS OF
VIEW OR OPINIONS STATED DO NOT NECES-
SARILY REPRESENT OFFICIAL OFFICE OF EDU-
CATION POSITION OR POLICY.

ED050868



RECEIVED
JUN 29 1971
NMSU
E.R.I.C.

# A REPORT  -  "THE RESPONSE TO AN EVEN CHANCE"

## The Gallup-McKinley County School District as seen by the New Mexico State Department of Education

New Mexico State Department of Education

February - 1971

005299

PLAINTIFF'S EXHIBIT
No. 1

DOCUMENT RESUME

ED 050 868                RC 005 299

TITLE       A Report — "The Response to An Even Chance": The
          Gallup-McKinley County School District as Seen by
          the New Mexico State Department of Education.
INSTITUTION    New Mexico State Dept. of Education, Santa Fe.
PUB DATE     Feb 71
NOTE       51p.

EDRS PRICE    EDRS Price MF-$0.65 HC-$3.29
DESCRIPTORS    Administration, *American Indians, *Educational
          Finance, *Federal Aid, *Investigations, Programs,
          Public Schools, *State Departments of Education,
          State Federal Aid, Students

ABSTRACT
     The document is a response by the New Mexico State
Department of Education to "allegations, accusations and
implications" of misuse of Federal funds intended for American Indian
children. The allegations resulted from an investigation--supported
by the NAACP Legal Defense and Educational Fund with the cooperation
of the Center for Laws and Education of Harvard University--which was
conducted in a number of states with public schools serving the
Indian population. This document contains the response for the
Gallup-McKinley County School System exclusively. The rebuttal
selects specific allegations from the original report, "An Even
Chance" (ED 047 867), and presents answers and clarifications.
Recommendations of the reviewing team, resulting from their follow-up
study, are also included. (EL)



## ACKNOWLEDGMENTS

Special thanks are afforded to Mr. Bob King of the Navajo Area Office, B.I.A., Window Rock, Arizona, and to Mr. Sam P. Morley, Albuquerque Area Office, B.I.A., who accompanied team members to Gallup.

Special invitations were extended to Mr. Peter McDonald of the Navajo Nation and Mr. Robert Lewis, Zuni Governor to assist team members in the investigation.

New Mexico State Board of Education

| | | |
|---|---|---|
| L. Grady Mayfield<br>President | P.O. Box 535<br>Las Cruces, N.M. | 88001 |
| K. I. Langley<br>Vice President | 1601 S. 6th<br>Tucumcari, N.M. | 88401 |
| Mrs. Thelma Inmon<br>Secretary | Rt. 1, Box 160<br>Deming, N.M. | 88030 |
| Albert Amador<br>Member | Box 401<br>Las Vegas, N.M. | 87701 |
| Frederic C. Comstock<br>Member | 729 San Mateo, N.E.<br>Albuquerque, N.M. | 87106 |
| Virgil Henry<br>Member | 710 Yeso Drive<br>Hobbs, N.M. | 88240 |
| Ed Heringa<br>Member | 515 Maple<br>Clayton, N.M. | 88415 |
| Mrs. Charles R. Holmes<br>Member | 1006 Lopezville Road<br>Socorro, N.M. | 87801 |
| H.M. Mortimer, M.D.<br>Member | 720 University Ave.<br>Las Vegas, N.M. | 87701 |
| Charles C. Murphy<br>Member | 2200 Gidding<br>Clovis, N.M. | 88101 |

Review Team Members

| | | |
|---|---|---|
| Mr. Frank Ready | – | Acting Director, Elementary & Secondary Education |
| Mr. Doyle Eakens | – | Specialist, Guidance & Counseling |
| Miss Nora Chavez | – | PL 874 & 815 |
| Mr. Bill Lemon | – | Coordinator, Administrative Services |
| Mr. Willard Scott | – | Coordinator, Indian Education |
| Mr. James McLarry | – | Indian Education |
| Mr. Delmar Smith | – | Indian Education |
| Mr. Don Harvey | – | Coordinator, Funds Management (ESEA I & II, NDEA III, PL 874 & 875) |
| Mr. Bill Caperton | – | Coordinator, Compensatory Education |
| Mr. Joe Reeder | – | Audits & Accounting |
| Mrs. Gretchen Plagge | – | Acting Director, School Lunch |
| Mr. Clarence M. Hill | – | Information Specialist |

Leonard J. De Layo,
Superintendent of Public
Instruction

Weldon Perrin, Deputy
Superintendent of Public
Instruction



3

## TABLE OF CONTENTS

Foreword.....................................Page 1

Instructional Services.......................Page 2

      Conclusions..........................Page 6

Federal Impact Funds.........................Page 7

Pupil Transportation.........................Page 14

Johnson-O'Malley Funds.......................Page 15

Title I......................................Page 29

      Conclusions..........................Page 34

School Food Services.........................Page 35

      Conclusions..........................Page 39

Conclusions..................................Page 40

Recommendations..............................Page 42



New Mexico State Department of Education's Response to
"An Even Chance" for the Gallup-McKinley County Board
of Education

A report to the Gallup-McKinley County Board of Education

concerned the  accusations, allegations and implications re-

sulting from an investigation by a team supported by the NAACP

Legal Defense and Educational Fund with cooperation of the Center

for Laws and Education,  Hammond University.

The report issued by the above study committee is entitled

"An Even Chance" and is defined on the front cover as a report on

federal funds for Indian children in public school districts.

While the complete report is concerned with a number of states and

with several districts in New Mexico, this particular response

will deal exclusively with the matter that concerns Gallup-McKinley,

New Mexico.

The New Mexico State Department of Education through the New

Mexico State Board of Education was requested by the Gallup-

McKinley County Board of Education to conduct an on-site investi-

gation of the Gallup-McKinley County School system to determine

the validity and extent of the allegation and to also determine

what steps have been taken or are being taken to correct any situa-

tion which was not conducive to good education for all children in

the Gallup-McKinley County School system.

Members of the State Department of Education staff conducted

on-site investigation of the schools during the month of February

1971.  Staff members of the Instructional Division, Indian Educa-

tion (Johnson-O'Malley), School Food Services, Federal Funds

1.

Management (P.L. 815 and P.L. 874), Title I ESEA, Migrant and
Compensatory Education, visited classrooms, reviewed federal
programs, interviewed staff and students and talked with school
patrons concerning the conduct of education in the county.

On March 4, 1971, the Gallup-McKinley County Board of Educa-
tion met with the Superintendent of Public Instruction, a member
of the State Board of Education, the Deputy Superintendent and
the staff members who had conducted the on-site investigation.

This was an open meeting attended by more than 60 citizens of
Gallup-McKinley County.  All citizens who attended the meeting were
given an opportunity to ask questions and/or express their views.

The interchange between the local Board of Education, the
local citizens and the State Department of Education staff lasted
in excess of three and one-half hours.

Following are the reports of the members of the New Mexico
State Department of Education staff members in response to the
"An Even Chance" report.

Instructional Services Division

Mr. Frank Ready, Acting Director, Instructional Services, and
Doyle R. Eakens, Director of Guidance Services, New Mexico State
Department of Education, prepared the following report for the
Gallup-McKinley County Board of Education and for the people of
McKinley County.  The visitations were made on February 23-24-
25-26,1971.  The investigators reply briefly on these findings to
specific allegations as identified by particular page number.
General recommendations and conclusions of the New Mexico State

Department of Education will follow at the end of all of the reports.

Report to the Gallup-McKinley County Board of Education by members of the Instructional Services Division of the New Mexico State Department of Education on visitations made to check out allegations found in "An Even Chance" report. Visits were made on February 23-26, 1971, by Doyle R. Eakens, Director of Guidance.

Schools Visited:

Aileen Roat Elementary, Zuni High School, Gallup High School, Lincoln Elementary, Crownpoint Elementary and High School, Sunnyside Elementary, Thoreau Elementary

Persons Interviewed:

A.C. Woodburn, Superintendent; Don Stokes, adm. office; L.O. Yandell, adm. office; Wendell Hendrickson, principal, Gallup; Roland Carey, principal, Towa Yallane; Orval Adams, principal, Aileen Roat; William Butler, principal, Zuni High; M.E. Fairchilds, counselor; Kenneth Kostenbader, principal, Lincoln Elementary; Alice Williams, principal, Sunnyside; Ralph Markham, principal, Crownpoint Elementary; Zane Smith, Crownpoint High School; Mrs. M. Esperanza, clerk, Gallup-McKinley Draft Board; George Tsouklarkis, student, president Indian Club; Warren Siow, student, member Indian Club; teachers, teacher aides and students in each school visited.

General Statements of Reception and Attitude

From the time I entered the Gallup-McKinley School Administration Office, I received full and appreciative cooperation. The people interviewed in every school were most cooperative and anxious to show their programs and discuss their problems.

They all expressed concern over what they consider the misrepresentations of facts that have received such wide spread publication and seemed pleased to have the opportunity to talk about and show what is being done in the school system.

Findings on Specific Charges Made in "An Even Chance"

Page 8-9

While it is quite true that certain schools in the Gallup-Mc-Kinley schools are operating at near and above planned capacity



others below capacity, the average class sizes are approximately equal. There are obviously some differences, but these do not appear to be significant. There also are differences in class size within individual schools.

Some of the schools visited and their average class sizes exclusive of kindergarten are as follows:

| | | | |
|---|---|---|---|
| Aileen Roat | 26 | Crownpoint Elementary | 25 |
| Lincoln Elementary | 28 | Thoreau Elementary | 25 |
| Sunnyside | 26 | | |

As in every system, the class size in the high schools varies in accordance with interest levels and requirements. There were no severely overcrowded classes observed in any of the high schools visited.

## Page 14, Item #3

In all schools visited, the maintenance of the buildings was adequate. They were clean and the grounds well kept. The rest rooms were, without exception, clean and fresh smelling. The custodians were busy cleaning in every school and said they had supplies whenever needed.

For the 1970-71 school year, of the 19 elementary schools in the system, 17 received approved status, two approved advised. Of the seven secondary schools, six were approved, one approved advised. Approved status means that the schools meet the standards established by the New Mexico State Board of Education.

The highest teacher loads at the secondary level occur at Kennedy Junior High and Gallup High School -- both are in the city of Gallup. The lowest teacher loads occur at Thoreau and Zuni -- both rural high schools.

The professional teaching staff is certified by the State Department of Education. Audio-visual equipment was in use in every school. The film library, which is excellent, is maintained in the central office. The films are available to all schools on request and range in instructional levels from K-12. The faculty members interviewed indicated they had never been refused supplies or equipment when it was requested unless it was not available in the system.

Textbooks were current and in good condition.

Libraries were adequate and efforts are being made, with funds available, to increase the number of volumes and to widen the range of reading interest.

4



There were many volumes in the elementary schools that related to the Southwest and Indian culture.

<u>Page 43-44</u>:  "Grassroots" - involvement of community

In every school area visited, there were active attempts being made to involve as many people in the community as possible. Meetings have been called and notices sent via students, teachers and radio informing the public of the time of meetings and the topics to be discussed.  School administrators indicated their doors were always open to parents and that they were encouraged to visit the schools at any time.

<u>Page 45</u>:  "Corporal Punishment" - use of paddles or boards to whip students

By administrative directive, there is no type of corporal punishment allowed in the Gallup-McKinley system.

Last year, corporal punishment was permitted.  The "boards" used in this punishment were reported to the interviewer to be rulers only.

There were no paddles or boards seen in any school or individual room observed.

<u>Page 46</u>:  "Speaking Navajo"

There is no administrative policy against using Navajo in the school.  In every school visited, Navajo was being spoken in the hallways and on playgrounds.  The student handbook from Gallup High School makes no reference to the banning of Navajo at school.

In interviews with students at Gallup High School, Zuni High School and Crownpoint High School none had ever been rebuked for speaking the native language.

Individual teachers have, however, requested their students not to speak Navajo in the classroom.

"Haircuts and Washing"

The cutting of hair, showering and washing of clothes takes place occasionally.  This is done primarily at the direction of the Public Health Service, and is a health measure.  There are many cases of head lice, impetigo and athletes foot.  Washing and hair cutting was never forced on individual students.  No complaints were ever received from parents about this practice. On the contrary, it was appreciated and well received.

5



9

"Reporting Students to Draft Board"

In an interview with the clerk in the McKinley County Draft
Board it was reported by Mrs. Esperanza that to her knowledge
this had never been done and that "it was news to her." It
was felt that students may have been told that, unless they
stayed in school, they would be subject to call by the draft.
There were no students reported to the draft board for dis-
ciplinary actions.

Page 47: "Extermination of Indians"

In every schools visited there were displays of Indian students'
art work. Every library had many volumes relating to Indian
history and culture. The children were happy and outgoing in
the situations observed. Navajo language, its history and cul-
ture is taught in the Gallup High School. There are Indian
Clubs at both Gallup and Zuni High Schools that present Indian
dances, culture and tradition throughout the state and other
areas of the United States.

It is true that textbooks in the elementary area do not relate
to the Indian, but, as the principals have stated, these are not
available.

Page 48: "School Boards"

There are currently three Navajos on the five-man school board
for the Gallup-McKinley County Schools.

Page 52: "Parent Participation"

The statement reportedly made by Elementary Supervisor and
Title I Coordinator was denied, or taken out of context.

Page 53: "Threat to Withhold Funds"

No justification of this statement could be found.

CONCLUSION AND OBSERVATIONS:

In every school visited, classes were of manageable size, aides
were used where multi-lingual (English, Indian, Spanish) back-
grounds occurred.

In no situation was there any outward display of discrimination
against any group of children.

A concentrated effort has been made by the individual schools
and administration to keep the parents and community well in-
formed of school activities through bulletins, the press and
radio.

6



C.  140

Federal Impact Funds

Public Law 815 is the federal statute which assists local
education agencies to build school facilities when there is ex-
pressed need due to conditions of federal impact.  Some examples
of this include military installations, federal complexes, Indian
children in public schools, etc.  Public Law 874 is the federal
law allowing money to be allotted to local school systems for
operation of schools which are impacted with children from federal
installations or children from federal reservations.  By and large
the laws are defined as federal monies available to local schools
in lieu of local taxation.

Nora Chavez, director of Public Laws 815 and 874 for the Depart-
ment of Education, had the following response to the allegations con-
tained in "An Even Chance."  The accusations implied that federal
monies were used to build bigger and fancier buildings and school
facilities in Gallup proper than were built in the outlying or rural
areas.  The other area of concern revolved around the possibility
that 874 funds were used more for non-impact children than for the
Indian children who in a sense of speaking "earned" the monies for
the school system.

Miss Chavez responded to the report by specific pages as follows:

Page 2, paragraph 4

It is implied that the availability of Impact Aid and Johnson-
O'Malley funds makes it possible for local districts to reduce
taxes for non-Indian property owners.

Reports from the Division of School Finance, DFA, show that the
local district tax levy has never been reduced in New Mexico by
any district receiving such federal funds.  The same is true of
the 5-mill county wide levy which is set by statute.

## Page 5, paragraphs 3 & 4

It is true that Indians were not included in P.L. 874 when
it was first enacted into law, since Johnson-O'Malley funds
originally were in lieu of taxes and for general operation
and maintenance, therefore resulting in "dual" payments.
However, since 1958 the counting of Indian pupils as eligible
for P.L. 874 payments does not result in "dual" payment
because 874 funds are for general operation and maintenance
and Johnson-O'Malley for special and unique needs of Indian
pupils.  It is true that Impact Aid has become a major source
of funds for districts with Indian pupils.

## Page 6, paragraphs 3, 4, 5 & 6

The reference to P.L. 815, school construction, is generally
correct.  The local school districts are not blamed for the
back-log in school construction and the reference to the esti-
mated need for construction is correct.  This office supplied
the estimate for New Mexico alone and it amounts to 50 per
cent of the total.

## Page 6, paragraphs 7 & 8, and all of page 7:  Accountability for and use of federal monies

The statements are general in nature and may be true in some
districts in this state and in other states.  The fact that
874 funds go directly into the general operating fund of the
district is correct.  In New Mexico the funds are accounted
for under the accounting practices prescribed by the Division
of School Finance which includes annual audits.

It is alleged in the report that in "large districts where
Indian enrollment is concentrated in certain schools close to
the reservation, there is typically a vast difference in the
quality of education, the condition of the school, and the pro-
vision of books and supplies offered in these schools from
those offered in the predominantly non-Indian schools."

Visitation efforts were concentrated in the City of Gallup,
including Indian Hills Elementary, and the following schools
in the "county" as they refer to schools with predominantly
Indian pupils.  A copy of the per pupil allocation for basic
supplies and equipment paid for from general operating budget
funds, in which 874 funds are included, was provided.  People
in the elementary and secondary sections of the central office
and the principals and some teachers in Indian Hills Elementary,
Church Rock Elementary, Jefferson Elementary, Crownpoint Ele-
mentary and High School, and Thoreau Elementary and High School
were interviewed.  Their replies were that the per pupil alloca-
tion is adhered to and that supplies and equipment are adequate.



The schools with Johnson-O'Malley pupils were pleased with
the additional allocation for this purpose from Johnson-
O'Malley funds. In no school was there a feeling that the
allocation of funds was not equitable.

These same people were questioned about the equality of
educational services from the instructional specialists
apart from Johnson-O'Malley or Title I services, and the reply
was the same. Schools in the "county" felt that the services
were adequate. They were also asked whether, in their opinion,
preference was given to schools in the "city of Gallup" in the
quality of teachers, whether principals out in the county were
given an opportunity to recruit, select or reject teachers paid
for from general operation funds. Their reply was favorable.
Some said they would compare their faculty with anybody in the
Gallup-McKinley School District or anywhere in the state or
any other state. They confirmed the statement by the business
manager of the school district that there were rural increments
for teachers from $80.00 to $250.00 depending on distance, isola-
tion, etc. While not amounting to much in terms of money, it
was an assistance in recruiting and keeping good teachers. The
rental schedule for teacherages was another fringe benefit for
teachers out in the county. One principal said that there was a
little higher turnover in the county because teachers who live
in the city own their homes and have a higher stake in accumula-
ting seniority which resulted in seemingly higher salaries being
paid in the city.

The conclusion is that there is not a "vast difference" as stated
in "An Even Chance" and, in fact, there is equality with the
schools with predominantly Indian pupils getting the edge.

Page 7, paragraphs 3,4,5 & 6

The report compares Indian Hills Elementary School, adequately
described except for the presence of closed circuit T.V., with
Church Rock Elementary School. This is an unfair comparison
because Church Rock was built about the same time as Jefferson
Elementary in town. Indian Hills should be compared with schools
such as Towa Yallame at Zuni and Navajo Elementary at Navajo
where the comparison is favorable. The carpet in the library was
obtained because the principal and teachers voted to do without
certain things such as new teachers' and pupils' desks in order
to save $4,000 for the indoor-outdoor rug in the library. This
resulted in the reduction of noise, thereby raising instructional
efficiency. It must be kept in mind that construction designs,
use of materials, instructional styles do change, and the latter
schools are much newer and compare as to size and cost of con-
struction.

In comparing the buildings, Jefferson and Church Rock, it was
found they are similar in structure and have the same type multi-
purpose room which is used as a cafeteria. The one at Church



Rock needs fixing at one end to improve the looks of a balcony-
type storage space, and the one at Jefferson needs to be
plastered to cover cracks in the wall through which one can see
daylight.  The school in town has an advantage of a bigger en-
trance lobby and two restrooms in each primary room, compared
to one for each primary room at Church Rock.  Church Rock has
kindergarten classes, Jefferson does not.  The administrative
area at Jefferson is more attractive, including drapes fur-
nished by the PTA.  It is felt that this is a result of a dif-
ference in esthetic tastes of the administrator.  The grounds
at Church Rock could stand improvement, especially in extended
sidewalks where students disembark from the buses.  It is
generally agreed that improvements of this nature depend on the
principal and not where the building is located, whether in
town or in the county.  This was repeated many times during the
interviews.

While the school grounds at Jefferson are generally in better
shape, improvement is needed to eliminate much of the mud on
the back of the building.

Comparing Indian Hills with Towa Yallane Elementary at Zuni
Pueblo, it is found that the first phase of Indian Hills Elemen-
tary was built for 300 capacity at a cost of $355,303.  Towa
Yallane cost $709,843  for same capacity plus 12 teacherages.
An average teacherage costs $35,000, leaving $389,843 for the
school facilities.  Navajo Elementary, built by bond money also
has a capacity of 300 and cost $362,534.  It also has circular
buildings and a carpeted library.

The Thoreau Elementary and High School do not need lengthy
explanation.  Interviews with the Elementary and High School
principals revealed that the Navajo people are perfectly aware
that P.L. 815 funds have not been appropriated for some time
and that the administration has filed application for additions
which, if funded, would make these schools the best equipped in
the district.

Page 8, paragraphs 1 & 2:  Overcrowding and Inferior Facilities
at Thoreau

The principal at Thoreau High School feels that the Navajo people
are very much aware of the failure of P.L. 815 funds to material-
ize and do not blame the local school officials for the over-
crowded conditions.  He, as well as other principals in the
county, remember when all the new buildings were in rural areas
and the schools in the city were in deplorable condition.  They
do not resent the use of federal funds to build Gallup High
School since it was serving the secondary needs of Thoreau,
Crownpoint and Tohatchi.  They also are very much aware of the
fact that when secondary facilities were built at these three



places, the scope of the projects was reduced by HEW because
they did not accept the estimates of the LEA.  The result was
that the facilities were crowded the minute the doors were
opened, with Thoreau being the worst off.  Gallup High serves
Spanish-American, Indian and Anglo students.

Page 8, paragraph 3:  Pertaining to Inferior and Sub-standard
Education

The report claims that the presence of P.L. 874 funds, which
amounted to much more per pupil than local taxes, makes the
"inferior and substandard" education more galling.  Parents
and teachers in the Crownpoint area were interviewed.  All
but one felt that this was not true.  They are satisfied with
the educational offerings and with public schools.  The one
exception was a non-Indian woman who taught school at one
time in Gallup and has a sister who still teaches in Gallup.
She said she thought there was a little preference in the
city compared to the rural area schools, but she could not
give a specific example.  The allocation for supplies and
equipment and educational services, including the caliber of
teachers, confirms that education for Indians is on a par with
non-Indians.  Conclusion:  This paragraph makes an allegation
but does not give a concrete example.  If the report is refer-
ring to the overcrowded conditions, the fault is not with the
local school administration in the eyes of the Navajo people
who do not hesitate to ask about P.L. 874 and P.L. 815 matters.

Page 8, paragraphs 4 & 5:  Use of P.L. 874 or Federal Impact
Funds

The position taken by the Office of Education as to how Impact
Aid is administered as mentioned in the report is correct.

The U.S. Office of Education does not decide where or how the
applicant school district will spend the funds, nor does it
indicate that an applicant must use its grant to construct high
schools rather than elementary grade facilities.  The funds are
to be expended according to the laws of each state, therein
leaving any misuse a matter of state responsibility.

Page 10, paragraph 1:  Use of Impact Aid P.L. 874 and P.L. 815

The general statement is made here that there is a discrimina-
ting allocation of educational services, meaning that Impact
Aid funds do little to improve the educational opportunities of
Indian children.  There was no evidence found to indicate that
there is discrimination in allocation of funds or educational
services paid for from operational funds in the Gallup-McKinley
County School District.  The construction of facilities has
been a frustrating experience equally for the school administra-
tion, the principal, teachers, children and parents who have to

11



live with the crowded conditions in schools where P.L. 815 funds are expected to materialize. The district has been bonded to capacity for the past ten years but has used the proceeds to construct facilities in the city with the exception of Navajo Elementary School. It is felt the local school board should explain the decisions in this matter. One question asked in Thoreau by teachers is why bond money wasn't used there when ad valorem taxes are paid by corporations in that part of the county.

Page 48, paragraph last:  School Bond Elections and Discrimination

Reference to a New Mexico law on voting in bond elections is no longer a viable question because Chapter 6 (HB 38) of the 29th Legislature, Second Session, changed the situation.  Now non-property owners can vote in school bond elections if they are qualified electors.

Page 50, paragraphs 1 & 2

Regarding the parents from Crownpoint attending a Gallup School Board meeting, some Navajo parents interviewed said it was Anglo parents who attended the meeting, not Navajos.

Regarding statements made of PTA and the all-white PTA executive board.  The elementary principal said it was true.  He said the president of the PTA at that time was a local medical doctor very well liked in the community, and that no attempt has ever been made to keep Indians out of such organizations.  Attendance of Indian parents is poor because of distance and the fact that meetings are held at night.  This year a Laguna Indian married to a Navajo is president of PTA at Crownpoint.  This is a "combined" group for both elementary and secondary schools. Two Navajo teachers were asked to serve as officers but declined. One Navajo parent said she attended regularly.  She said it is the fault of Indian parents who don't attend these meetings that more participation is not possible, although she does not feel that Indian parents are prevented from expressing themselves. Plans are being made to ask for a special bus to bring Indian parents to PTA meetings.

In the schools visited, there were Indians in the majority in jobs such as bus drivers, cooks, secretaries.  There is a concerted effort to get all the qualified teachers of Indian descent that they can find, but they are not plentiful.

Page 52, paragraph 2

I found no evidence of hostility towards parents' participation on the part of school officials either at the central office or in the rural areas.  They are asking for and very



12

much want a bus, as referred to before, to bring parents to
school meetings.  School officials in Gallup deny saying
that "parent participation is a bunch of baloney."

Page 53, paragraph 7

In reference to Impact Aid, Navajos are very much aware of
this federal aid.  They do ask questions and are given answers
by the school officials.  The parents at Thoreau and Crown-
point for the most part are well aware of the lack of P.L. 815
funds and that they have not been provided by the federal
government.

Page 62:  Recommendations, State Department of Education

Recommendation No. 3 - Monitor and audit local school systems
to insure that funds designed for Indians actually are used to
teach them.  It seems that some improvement could be made in
this area, although audits cannot reveal discrepancies such as
the report alleges since the designation of the funds is a
matter of their interpretation rather than a matter of law,
such as Impact Aid funds.

Recommendation No. 4 - Establish an all Indian task force of
members elected by each tribe to advise on state policy toward
Indian education.  This warrants serious consideration and will
be covered in part by the general recommendations to follow.

Page 62:  Recommendations, U.S. Office of Education

Recommendation No. 3 - Equal distribution of Impact Aid funds
to Indian children.  The Division of School Assistance in
Federally Affected Areas cannot establish procedures as re-
quested unless the P.L. 874 law is amended to make aid to
Indians categorical.  (The reference is to Impact Aid funds and
their distribution so it does not refer to P.L. 815 which is
categorical in that it is for construction of an approved project)

Recommendation No. 4 - Review all U.S. Office of Education grant
programs to find more resources to improve public education for
Indian children.  This warrants consideration.  The New Mexico
Department of Education and New Mexico State Board of Education
would welcome the opportunity to be part of such a study.

Page 63:  Recommendations for Congress

Recommendation No. 1 -- Fully fund those Impact Aid districts
where Indian children are enrolled.  Agreed.  This is almost
accomplished in that schools with high impact of 3(a) pupils, in
which category a majority of Indian pupils belong, receive 100
per cent entitlement.

13



<u>Recommendation No. 2</u> - Fully agree with first part of recom-
mendation, second part is not necessary since P.L. 815 funds
can be retroactive in that funds are appropriated for needed
facilities under Section 14.  If they mean "reimburse" for
funds denied in past years but not now needed, I don't believe
it would be legally possible.

<u>Recommendation No. 3</u> - This sounds like an exclusive Indian
"civil rights act".  Again the Impact Aid law would have to
be amended to permit the Office of Education to take this
action.  I believe that good accounting practices through
state laws would show whether or not a local district was
being unfair in distribution of general operation funds into
which pot Impact Aid money is put.

## Pupil Transportation

Several comments were made in the report "An Even Chance"
concerning discrimination against Indians in school bus transpor-
tation.  In order to clarify the matter and set the record straight,
Bill Lemon, the director of school bus transportation of the New
Mexico State Department of Education, presented the following
report:

On page 18 of the publication, "An Even Chance" it is alleged
that "In Crownpoint, New Mexico, Navajo children did not get
home until dark in winter months.  The school bus delivered
white children to their homes in town before making the trip
to Indian homes."

This could only have happened prior to the time the Crown-
point High School was in operation.  Until then, the nearest
and only high school available in the county was the Gallup
High School, a distance of 56 miles from Crownpoint.  It is
obvious that it would be late when pupils reached home.

At present, transportation is provided to the Crownpoint School
as in other schools.

14



### No. of Pupils Transported

| Elem. | Sr. High | Total | Bus Capacity | Miles One Way |
|-------|----------|-------|--------------|---------------|
| 12 | 49 | 61 | 60 | 17½ |
| 21 | 11 | 32 | 60 | 28 |
| 51 | 16 | 67 | 60 | 25 |
| 16 | 24 | 40 | 60 | 30 |
| 35 | 21 | 56 | 60 | 20 |
| 39 | 16 | 55 | 60 | 19½ |
| 34 | 19 | 53 | 60 | 25 |
| 30 | 7 | 37 | 48 | 38½ |
| 28 | 29 | 57 | 48 | 29½ |
| 35 | 11 | 46 | 48 | 29½ |
| 38 | 15 | 53 | 60 | 35 |
| 36 | 20 | 56 | 66 | 35 |
| 375 | 238 | 613 | 690 | 332½ |

12 Buses   Aver. 27.7

A total of 60 per cent of the pupils at the Crownpoint schools are bused.

On page 55, the report indicates that with the closing of the Ramah High School, transportation was reduced or curtailed. There was no reduction in transportation. The only change was extending buses to Zuni High School. Apparently a number of those who had formerly ridden the buses did not continue to do so. Parents of pupils who lived in remote areas were offered the same per capita reimbursement as all other parents similarly situated in the state - to transport their children to a point where they could board a school bus. There are, at present, 410 such arrangements in the state of New Mexico.

## Johnson-O'Malley Funds

The report "An Even Chance" seemed to be aimed particularly at deficiencies and problems revolving around the Johnson-O'Malley program for Indian children and Title I of the Elementary Secondary Education Act which is essentially a program to supplement educational opportunities for disadvantaged children identified to be in the low socio-economic group. Title I programs are not



exclusively for Indian children, but many Indian children are included and do receive the benefits of the programs.

Because the Indian education programs in the public schools seem to be the focus of concern of the "An Even Chance" report, three documents in response to the accusations contained in the report are included here. These reports were prepared by the Division of Indian Education of the New Mexico State Department of Education which is responsible for the administration of Johnson-O'Malley Funds, in conjunction with the area offices of the Bureau of Indian Affairs.

The first report concerns the plan of operation of the Division of Indian Education as it refers to the operation of adopted Johnson-O'Malley state plan.

## State Plan

Staff members of the Indian Education Division, as well as Bureau of Indian Affairs staff members, make visits to each of the 20 districts at least two times each year. The usual procedure for these visits is to meet with the local super-intendent to review the current budget and programs, and to discuss methods for improvement of programs, and then go into the school buildings for an on-the-site review of each program sponsored by Johnson-O'Malley.

All districts, with the exception of Central Consolidated and Truth or Consequences, have been visited at least twice this year and some of them more than twice. This assures both agencies that funds are being spent for their intended pur-pose, and that the educational needs of the Indian students are being met to the best ability of the local district.

It is policy to involve the Indian people living within the local school districts in planning programs and budgets. A copy of a memorandum to local superintendents in regard to this follows in this report.

Also, in order to secure more Indian involvement and parti-cipation in school affairs, the Division of Indian Education has sponsored Indian Parent-School Personnel orientation



programs in four districts this year. At Jemez Springs, on August 28, 1970, a total of 125 Indian parents met with the school staff and with representatives of this division for a full day orientation program. At Laguna-Acoma school in the Grants district, on September 12, 1970, a total of 155 parents of Indian students met with school personnel and personnel from this division for orientation. Information relative to these programs follows in this report. Present plans are to conduct such meetings with parents and teachers in the Cuba and Gallup districts during this school year.

Each school district is required to present this division with an itemized budget and a justification narrative two years in advance. Copies of these budgets and narratives are presented to the Bureau of Indian Affairs for review and approval.

It is the opinion of the staff of this division that the NAACP report "An Even Chance" is erroneous in many aspects and that the NAACP interviewers contacted a few disgruntled teachers and parents who were eager to make derogatory remarks about their local districts. These people may not necessarily have been speaking for the majority of the parents in this school district.

It is agreed that there is room for improvement in each of the Johnson-O'Malley districts, as there probably is in all schools, but the division is convinced that the local school officials are attempting to do all that they can at present to provide the best possible education for each of their students.

Under the present State Plan, which was designed by the Indian leaders and approved by all affected agencies on October 6, 1970, there is no longer any restriction as to parental employment. Eligibility is based upon need.

The accountability of Johnson-O'Malley funds is presently under study by the Indian Education Division, the Fiscal Division of the Department of Education, and Public School Finance Division in an attempt to determine a method which will provide greater accountability, and also be in agreement with policies, regulations and requirements of this division, administrative services of the Department of Education and state laws.

Beginning this year, after conferring with the Chief of Public School Finance, an addition was made to each of the Johnson-O'Malley school budgets which provides the line item "parental costs." Heretofore, that particular item was estimated, and

17



reimbursements were made to the school districts upon receipt of invoices for the particular item for which reimbursement was requested. The invoice has always been and is still required. Also required is a statement showing to whom the parental cost item was issued, the grade of the student, the item description and unit cost.

At the suggestion of the Chief of the Branch of Public School Relations, BIA, pre-first classes were cut from the budget as it was felt that this did, in fact, provide double payment for the six-year old student. Also, at this time, the heavy emphasis on Head Start funding and JOM kindergartens has reduced the need for the pre-first programs which, up to that time, had met this existing special need. Presently, with a very few exceptions (where there still are JOM Pre-first programs) the need of the Indian child is being met through Head Start and kindergarten programs funded either by Title I, Johnson-O'Malley or BIA.

## MEMORANDUM

To:        Superintendents of Johnson-O'Malley Districts

From:      Willard A. Scott, Director, Division of Indian
           Education State Department of Education

Subject:   Schedule for <u>1972-73</u> Johnson-O'Malley budget
           preparation

A representative from this office will be visiting with you to assist in preparing the Johnson-O'Malley budget for your school district for the 1972-73 school year. Finalized budget requests and narratives will be due in this office, in triplicate, not later than 26 February 1971.

We would appreciate your contacting the Indian people in your District and inviting them to have representatives at this meeting.

If the scheduled date shown below conflicts with your plans, please let us know as soon as possible.

| Taos | January 7, 1971 | 10:00 a.m. |
|---|---|---|
| Penasco | " 7 | 2:00 p.m. |
| Pojoaque | " 8 | 10:00 a.m. |
| Espanola | " 8 | 2:00 p.m. |
| Los Lunas | " 11 | 2:00 p.m. |
| Magdalena | " 14 | 2:00 p.m. |

18

| Bloomfield | January 18, 1971 | 2:00 p.m. |
| Farmington | " 19 | 10:00 a.m. |
| Central Consolidated | " 19 | 1:30 p.m. |
| Dulce | " 20 | 1:00 p.m. |
| Jemez Mountain | " 22 | 10:00 a.m. |
| Cuba | " 22 | 2:00 p.m. |
| Tularosa | " 26 | 10:00 a.m. |
| Ruidoso | " 27 | 10:00 a.m. |
| Bernalillo | " 28 | 10:00 a.m. |
| Albuquerque | " 29 | 10:00 a.m. |
| Grants | February 2 | 10:00 a.m. |
| Gallup | " 3 | 10:00 a.m. |
| Jemez Springs | " 4 | 10:00 a.m. |

cc  New Mexico Indian Pueblo and Tribal Leaders

### Program and Budget Procedures

This next document explains the program and budget prepara-
tion procedures which are required of every school system in New
Mexico that is eligible for Johnson-O'Malley funds.  The specifi-
city required by this joint report points up the fact that Johnson-
O'Malley funds are utilized to meet special needs of Indian chil-
dren.  One of the general implications of "An Even Chance" being
that Johnson-O'Malley monies are not carefully accounted for.

### JOINT REPORT

### Bureau of Indian Affairs - Division of Indian Education

The Johnson-O'Malley budgets are instruments through which
the Tribal leaders and/or their authorized representatives
of the local school community determine their JOM programs
and the amount of revenue needed in support of them.

The budgetary process for the twenty JOM public school
districts in New Mexico involves tribal leaders, parents,
local and state school officials and the BIA office in
studying educational needs and the budgeting of funds for
parental costs, special programs, kindergartens, inservice
training and special projects.

19



Such factors as the following are typically considered in JOM budget planning:

1. Needs of specific instructional areas, including:

    a. special subjects and teachers
    b. provisions for exceptional children
    c. guidance and counseling services
    d. cultural recognition programs
    e. health services
    f. kindergartens
    g. special transportation (for extra curricular participants)
    h. summer school programs
    i. inservice programs
    j. special projects

2. Needs of specific parental cost items include:

    a. school lunches
    b. course fees  (Home Ec., Shop, Science)
    c. activities admissions (tickets for football and basketball games, movies, assemblies, etc.)
    d. P.E. equipment (Gym shoes, gym suits, baseball and track shoes, towels, socks etc.)
    e. other parental cost items (cap and gown rental, conference attendance expense, test fees, etc.)

Once the needs have been determined through mutual consent, estimates of costs are prepared.  Alternate budget costs are considered and priorities established.

The form of the budget is in accordance with New Mexico Public School Finance requirements for district accounting procedures and practices and for BIA monitoring.  The JOM budgetary process is a continuous operation, and a continuous log is kept from the adoption of one JOM budget to the preparation of the next.

The Division of Indian Education also requires each JOM school district to submit, along with their formal budget, carefully annotated or supplemental descriptive data which interpret the purpose of the various budget items so that these budgets may be carefully monitored, analyzed and considered by Tribal and Pueblo leaders or their duly authorized representatives.

Once the JOM state budget has been approved by the Bureau of Indian Affairs and the Division of Indian Education, it is put into operation by the school districts in implementing the educational programs as planned and in accordance with the State Plan.  (Copy of State Plan follows this joint report).

All budgeted JOM funds are made a part of the total school budget and flow through the office of the Chief of Public School Finance as required by state law.

The education plan by the districts calls for the organization and development of programs, recruitment, selection and assignment of staff personnel, purchase of supplies, materials and equipment, keeping financial accounting records with respect to budget items, receipts and expenditures in accordance with the approved JOM budget.

Periodic and annual visits have been made jointly by Tribal and Pueblo leaders, state and BIA officials to monitor JOM funds and review JOM programs.

Educators in the JOM school districts are continuously seeking better ways to fulfill their responsibilities. All educators confront problems involving teaching and learning. They assume responsibilities for the welfare of all the pupils and show sympathetic understanding of Indian pupil problems.

### Statement of Navajo Area Officials and the Director of Indian Education

Following are comments pertaining to "An Even Chance" prepared by the Navajo area officials and the New Mexico Department of Education Director of Indian Education. These comments address themselves to some of the specific allegations by page as well as responding to the general implications of the report.

A state plan is mutually developed by tribal leaders and state officials working with representatives of the Bureau of Indian Affairs. The present New Mexico State Plan was developed from January to July 1969. During this period, there were two meetings of representatives of all New Mexico tribal groups with state and Bureau officials and one meeting attended only by tribal leaders. In July, the plan was given final approval by all parties involved.

Once the plan was approved, it became the guideline for all Johnson-O'Malley operation in the state. Districts develop projects on a priority basis in accordance with the plan and submit budgets to implement them. Within the limitations of funds available the projects are funded on a priority basis. This is done by the state office with the cooperation of Bureau representatives. At the schools, the budgets are discussed in open meetings which parents and tribal leaders

21



are asked to attend. Bureau representatives also attend.
To illustrate, at the 1969 Budget hearing for Gallup-McKinley
County Schools, representatives from each of the involved
tribal groups and Bureau representatives were present.

Once the projects are approved and funded, periodic visits
are made by the state director or his representative. At the
same time, federal officials make less frequent visits to
school districts. Sometimes visitations are accomplished by
state and federal representatives traveling together.

On page 62 of the publication, "An Even Chance", there is a
listing of items which concern the "Accountability of Federal
and State Agencies." With the exception of item 3, the points
made have been among the long standing goals of Indian educa-
tion, both from the standpoint of the state and Bureau of
Indian Affairs. It appears that item 3, which would "require
that local administrations discriminate in favor of Indian,"
misses the whole point. It is not a question of discrimination
but, rather, a matter of educating children with different
backgrounds.

On page 16, reference is made to the Peripheral Dormitory pro-
gram. The report cites the public school at Snowflake, Ari-
zona, as receiving full cost for educating students who live
in the Bureau of Indian Affairs Dormitory, at the same time as
receiving state aid for each Indian student. This is not cor-
rect. In Arizona, Bureau of Indian Affairs Dormitory students
are not counted for state aid.

However, the opposite is true in New Mexico. State aid is
being received. The Navajo Area office is, and has been, in
the process of negotiating with affected school districts on
this. The original agreements were for 20 years and new agree-
ments, if any, will have to be made in 1974.

Overall recommendations as we perceive them - BIA - State -
Local Major Finding (Page 42) Recommendation for BIA (Page 63)
recommends that Johnson-O'Malley funds be spent only on programs
especially for Indians.

1.  (a)  Not applicable in New Mexico. Johnson-O'Malley
    funds are presently spent only for Indians. Recommends
    that funds be contracted directly to Indians for special
    groups.

    (b)  The option for this now exists and there has been
    some evidence of interest on the part of a few tribal
    groups.

2.      Competent administration and management are unchang-
    ing goals of the JOM program. There have been recent

22



developments which should improve reporting of project development in terms of projects being discussed in greater detail. Also an improved system of monitoring and auditing has been developed which should result in greater state and federal attention to these matters.

3.       The advisability of centralizing authority for JOM in the central office, Education Division of the BIA, is questioned. First, on the basis of proximity to tribal leaders and field operations, it does not appear advisable. Second, state officials also appear to favor the present decentralization.

4.       In New Mexico there is a majority of Indian members on a number of school boards. We feel that this represents significant progress during the past few years, because this is where Indian involvement counts the most. At the same time, efforts are underway in most districts to get increased involvement of parent organizations in day-to-day school activities. The great distances involved and lack of adequate transportation makes such involvement difficult. Hopefully, projects to eliminate this difficulty can be funded in future years.

5.       In New Mexico, "open houses" have been held near the beginning of the school year to discuss JOM and other federal programs. Five dinner meetings were sponsored jointly by the Division of Indian Education, the State Department and the local school district for the same purpose.

The State Department of Education and New Mexico State University had a workshop for 20 school counselors from each of the school districts serving Indian students. A tour was made of all the Indian districts and meetings held with parents, tribal officials, students and other interested people. During these meetings, an attempt was made to answer questions and inform parents of resources available. Greater attention is planned toward this type of activity in the future.

Page 42 - Findings. It is curious to note the lack of agreement between the publication, "An Even Chance" and the "National Study of Indian Education" which was directed by Robert W. Havighurst of the University of Chicago. Probably this study is the most comprehensive look ever taken at the education of Indian Americans. The study was scientifically based and carefully conducted.

To illustrate, Havighurst found that the majority of parents and students interviewed have some criticism or suggestions but only 10 to 20 per cent indicated general and serious dissatisfaction with the schools.

23



Even with this, there appears to be no doubt that present
emphasis on parental involvement should be continued and
strengthened. At the same time there should be continued
emphasis on explaining federal programs available.

From all of this, it is vital that parental suggestions
for improvement of the school program be obtained. This
appears to be especially important and is borne out by
the Havighurst finding that the school achievement of
every child is dependent upon the combination of influences
of the school, the family and the local community. Havig-
hurst notes that when one of these falls short, the other
two are seldom able to make up for it.

The New Mexico State Plan for the administration and program-
ming of Johnson-O'Malley funds is entered into the report here in
its entirety to emphasize the point that there is considerable in-
depth planning for the programming of special educational needs of
Indian children and also to show that there is sufficient documen-
tation required both in the program audit and the fiscal audit areas
for education of Indian children in the public schools of New Mexico.

<u>NEW MEXICO STATE PLAN</u>

<u>FOR THE ADMINISTRATION AND PROGRAMMING OF JOHNSON-O'MALLEY FUNDS</u>

I.     <u>PURPOSE</u>

This plan is a guide for the administration and programming
of Johnson-O'Malley contract funds received by the State of New
Mexico through annual contracts with the Bureau of Indian Affairs,
to supplement the public schools in the education of Indian chil-
dren. This program of funds will be in accordance with the con-
tract signed by the Bureau of Indian Affairs.

II.    <u>AUTHORITY</u>

Johnson-O'Malley Act: (16 April 1934, C. 147, #1, 48 Stat.
596 as amended 4 June 1936, C. 490, 49 Stat. 1458).

III.   <u>POLICY</u>

This program of federal aid to certain school districts in
the state of New Mexico is based upon:

24



1. Operating criteria outlined in Volume 6, Part 2, Chapter 3, Bureau of Indian Affairs Manual.

2. State laws governing school operations in the State of New Mexico.

3. The extent to which P.L. 81-874, P.L. 89-10, and other fiscal aid is fully considered in justifying supplemental Johnson-O'Malley funds under the State Plan. This concept is carried out by the State of New Mexico in programming Johnson-O'Malley supplemental funds to the school districts.

4. Indian children are entitled to the same free public education as other citizens of the state (Section 1, Article XII, Constitution of the State of New Mexico), but to assist the state in making public education available to its Indian citizens, the BIA makes funds available to districts enrolling Indian children based on the following criteria and subject to appropriated funds for this purpose.

Criterion 1 - Method and Extent of Johnson-O'Malley Payments:

The funds provided by the Bureau of Indian Affairs to the State of New Mexico under annual contracts shall be based on financial needs of the eligible school districts after all local, state, and federal sources, including Public Laws 81-874 and 89-10 are considered by the respective school districts in justifying supplemental funds under the Plan. Payment to the eligible school districts is always determined by the amounts of money appropriated by Congress each year. Each school district is responsible for submitting a budget estimate two years in advance, using established guidelines and review of on-going programs and consultation with and approval of the tribal governing bodies (and the concurrence of the State Director of Indian Education).

Criterion 2 - Eligibility

A. School District

A school district is eligible to apply for assistance under this program if the following conditions are met:

1. Non-taxable Indian-owned and/or tribal-owned land is at present within the boundaries of the school district.

2. The number of eligible Indian students in attendance creates an unusual financial burden on the school district (or in cases where Indian children cannot finance their education). The school district having 10 eligible Indian students or three per cent of the district's total enrollment.

25



3.  Educational opportunities and programs are provided
    Indian students on the same basis as for other
    students in the school.

4.  The local school district recognizes and makes pro-
    visions for the special needs of all eligible
    Indian students.

5.  School taxes are levied at a rate not less than the
    average for all similar type school districts in
    the state, etc.

6.  Tax-exempt, Indian-owned, and/or tribal-owned land
    within the district is creating financial burden
    that justifies assistance under the approved State
    Plan.

7.  School boards will consult with Indian tribal re-
    presentatives.

8.  Other factors in justifying need and computing
    amounts of aid are:

    a.  The extent to which education is financed from
        property taxes

    b.  The amount of taxable evaluation behind each
        child.

    c.  Ratio of eligible Indian children to other
        children.

    d.  Ratio of tax-free, Indian-owned, and/or tribal-
        owned land to taxable land in the district.

    e.  Unique program needs of Indian children.

    f.  Immediate program objectives as pertains to
        the education of eligible Indian children in
        the district.

B.  Students

    Students eligible for consideration shall include only
    those who:

    a.  Can furnish evidence that they are one-fourth (1/4)
        or more degree Indian blood, recognized as members
        of Indian tribes or Indian pueblos of New Mexico.

    b.  Have parents that reside on or near Indian reserva-
        tions or Indian pueblos under the jurisdiction of
        the Bureau of Indian Affairs for the area.

26

    c.  Show a need for services and programs assisted with Johnson-O'Malley funds.

### Criterion 3 - Lunches and Milk

Johnson-O'Malley funds will provide reimbursement to the school district for the share of the cost of free or reduced-price lunches and milk served eligible Indian children for which the district is not reimbursed from other sources. Johnson-O'Malley funds will be provided for free or reduced-price lunches to all eligible students as determined by the school districts and the tribal governing bodies. Each school district receiving Johnson-O'Malley funds for lunches and milk shall file a complete statement with the state director of Indian Education showing the basis upon which determination is made that eligible children are unable to pay for lunches and milk received.

### Criterion 4 - Special Services

Payments may be made to school districts for special services such as counseling, special language instruction, developmental and remedial reading, and other special school programs which the school district may undertake to meet the needs of the Indian students. Johnson-O'Malley funds may be used for a share of those costs based on the number of eligible Indian students who are receiving the services and the availability of other funds which can be applied. Requests for such funds must be supported by financial and narrative justifications.

### Criterion 5 - Records and Reports

The Division of Indian Education shall prepare annual reports which consist of a statistical and narrative section. The statistical portion of the report shall cover an analysis of funds expended by each district and a summary of school enrollment (both Johnson-O'Malley and non-Indian) by grade levels, showing Indian transfers and dropouts, as well as number of eighth and twelfth grade dropouts, respectively. Budget requests are due on or before March 15 of the previous year, and annual reports are due on or before October 15 each year. Copies of the annual report, budget, statistical, and narrative sections shall be distributed to all school districts and tribal governing bodies receiving Johnson-O'Malley funds.

### Criterion 6 - Budget and Contract Procedures

After consultation with governing tribal bodies, the Division of Indian Education, New Mexico Department of Education, will submit an annual estimated budget prepared showing the needs and justification for funds for each school district and the

27

state administrative costs. Periodic and annual visits to participating schools will be made by state, tribal, and Bureau officials. These visits will be made to review school programs and the operating budget. Based on these reviews and visitations to the schools, a state Johnson-O'Malley contract will be negotiated between the Bureau of Indian Affairs, the state, and local governing bodies (tribal) to provide the needed financial support within the limits of funds available to the Bureau.

## Criterion 7 - Special Conditions

a. Unused Funds

Any unused funds received by the state through any annual contract shall be carried over as a budget balance on to the next contract period, after review and approval by the tribal governing bodies.

b. Changes and/or Amendments in the State Plan

This plan may be changed or amended by mutual consent of all agencies as needed in the event changes in federal or state laws affecting financial aid to school districts indicate a need for modification of the Plan.


### APPENDIX


## JOHNSON-O'MALLEY ACT

CONTRACTS FOR EDUCATION, MEDICAL ATTENTION, RELIEF AND SOCIAL WELFARE OF INDIANS

The Secretary of the Interior is authorized, in his discretion, to enter into a contract or contracts with any State or Territory or political subdivision thereof, or with any state university, college or school, or with any appropriate state or private corporation, agency or institution, for the education, medical attention, agricultural assistance, and social welfare, including relief of distress of Indians in such State or Territory through the agencies of the State or Territory or of the corporations and organizations hereinbefore named, and to expend under such contract or contracts, moneys appropriated by Congress for the education, medical attention, agricultural assistance, and social welfare, including relief of distress of Indians in such State or Territory.
(16 April 1934, C. 146, #1, 48 Stat. 596 as amended 4 June 1936, C. 490, 49 Stat. 1458).

28

## Title I

A general implication running throughout the "An Even Chance" report seemed to be that the Title I Elementary Secondary Education funds were being misused and that the Indian students were deriving little or no benefit from the programs of Compensatory Education or Education for Migrants.

The response of the Title I E.S.E.A. team which visited the Gallup-McKinley County schools in February of 1971, to check on the specific allegations is as follows:

### RESPONSE TO "AN EVEN CHANCE"
### GALLUP-McKINLEY PUBLIC SCHOOLS TITLE I, ESEA

State Department of Education Title I Visitation Team and Schedule:

Joe Reeder, Title I Auditor, on February 15-16, 1971, examined in the Gallup School's Central office the equipment, inventory, payroll records compared to authorized personnel in the approved project, certification of teacher aides, media center procedures and distribution records, vouchers for 1970-71 in preparation of profile sheets for each school unit for use in the on-site visitations by Joe Reeder, Bill Caperton and Donald Harvey on February 17, 18 and 19, 1971. All school units were visited except the Ambrosia Lake Elementary School.

### SIGNIFICANT POINTS IN "AN EVEN CHANCE"

Page 1, paragraph 6.- This refers to concentrated supplemental expenditures of Title I money on Indian children.

In the Gallup 1969-70 Title I project, $597,851 for 2,629 participants gives $227.40 per participant. In the project for 1970-71, $681,197 for 2,782 participants will result in an expenditure of $244.86 per participant.

Programs are supplementary and are as follows:

Instructional Activities:

a.  Kindergartens in 13 eligible schools with 19 teachers,

29



23 aides (four aides supplement Johnson-O'Malley kindergarten program).

b.   English as a Second Language program for lower elementary has a teacher in each of Church Rock, Crownpoint, Tohatchi, and Thoreau Elementary schools.  These are Title I eligible schools with a very high percentage of Indian students enrolled.

c.   English-Reading has four teachers serving grades seven and eight in Zuni, Crownpoint, Tohatchi and Thoreau secondary schools - high percent Indian students on or near reservations.  A reading clinician provides diagnostic and prescriptive services to Title I eligible schools including non-public schools.

d.   One elementary program specialist for language development including kindergarten.

Supportive services are snacks for kindergarten and supplementation of School Lunch Division's breakfast programs in 11 eligible Title I schools, two nurses and support services in health, transportation for kindergarten, attendance for kindergarten, media center and program administration.

Page 7, paragraph 3 - It is stated "...Indian children are not receiving an equal share of anything."

The ratio of Title I participants in the 1970-71 project by ethnic composition compared to the ethnic enrollment reveals that 33.6 per cent of Indian students, 9.5 per cent of black students, 7.3 per cent of Spanish students, and 4.7 per cent of all others participate in Title I projects.

| Per cent of School Enrollment by Ethnic Breakdown | | Per cent of Title I Participants by Ethnic Breakdown | |
|---|---|---|---|
| Spanish Surname | 23 | Spanish Surname | 7.5 |
| Indian | 58 | Indian | 88.0 |
| Black | 1 | Black | .5 |
| Other | 18 | Other | 4.0 |

By the very nature of the school district and school population and the location of Title I kindergartens, reading and language programs, Indian children are receiving Title I supplemental programs exceeding the participation of other ethnic groups.

30

<u>Page 7, paragraph 5</u> - This indicates that Indian Hills Elementary, a non-eligible school, has Title I equipment being used in the school.  This statement is true.  Indian Hills Elementary School previously was an eligible school.  Equipment placed in that school was for language development through remedial reading.  The program is no longer under Title I.  About one-third of the enrollment now in Indian Hills Elementary is Indian - 108 Indian of 308 total.

ESEA Title I Program Guide #24 (Edition of 5/68), on page 11 of Section 5, indicates: "Title I equipment may be used in schools that are or were eligible for Title I projects provided it is used for the same purposes for which it was originally approved.  The local educational agency could, therefore, use its own funds to continue a previously approved Title I activity and to use Title I equipment for that purpose.  First priority, of course, should be given to the utilization of Title I equipment in the currently eligible project areas."  Equipment not being used for a continuation of the originally approved project in currently ineligible or non-participating schools must be removed and placed in current Title I projects.  This statement applies to any Title I equipment now in ineligible or non-participating school units.

<u>Page 8, paragraphs 3 and 4</u> - This statement relates to Federal Money Supplements.  (See Item I above)

<u>Page 25, paragraph 6</u> - This states that "In Gallup-McKinley County, N.M., for example, the JOM (Johnson-O'Malley) budget for 1969-70 provided for four school nurses and the Title I application provided for seven.  Instead of 11 school nurses, our interviewer found only seven listed in the school directory, four paid by JOM and two paid by Title I.  A head nurse was assigned to Central Office."

In 1969-70 Title I approved project, on page 62, indicates two full-time registered nurses funded by Title I ESEA.  Title I line item budget indicates two registered nurses.  The project did not specify the assignment of the two nurses.

The head nurse is paid from state and local funds, serving all schools.  She reported that most of her time is spent with Title I health problems, Title I health education, and referrals of children from low-income families.

Title I is extending health services provided by local and state funding.  The question of Title I providing nurse services to meet State Standards for accreditation must be examined.

<u>Page 30, paragraph 3</u> - This states "Nearly all the school districts surveyed hired teacher aides from Title I funds, and in nearly every district they performed non-instructional tasks which benefited the entire school population."

31



Title I instructional aides in the Gallup-McKinley School District
for 1970-71 are limited to the Title I kindergarten projects.  The
aides are assigned to a specific teacher and received a one-week
training session with their assigned teacher.

Page 33, paragraph 6 - This states "In the Gallup-McKinley Public
School District, in Gallup, N.M., an entire audiovisual media
center is equipped and operated with Title I funds.  The interviewer
reported that materials from this center are made available to all
schools in the district on a free-loan basis."

The audiovisual media center was established with Title I and Title
I Migrant money to provide supplemental services to Title I and
Migrant participants.  The media center justification was to provide
vicarious experiences for Spanish and Indian participants.  Inter-
views in all Title I eligible schools indicate that these experi-
ences have increased greatly following the implementation of the
media center.  Positive responses were also received from eligible
non-public schools.

Local and state funding provide space, distribution service, cleri-
cal help and some A-V materials.  Each film returned must have an
evaluation by the user to determine retention of the film in the
media center as films are purchased on a one-year trial basis.  The
record of usage for the school year 1969-70 indicates 2,277 films
were distributed to Title I eligible schools out of a total dis-
tribution of 2,867.  Of the remaining 590 distributions, 165 were
in two Title I ineligible schools with migrant children. (The iden-
tification of migrant students is not completed). The other in-
eligible schools have a minimum of 13 per cent Indian students
enrolled.

The films are available to all schools in the district on a free-
loan basis.

Page 33, paragraph 7 - (See statement above referring to concentrated
supplemental expenditures)

The expenditure mentioned is not one-half of the local and state per
pupil expenditure in Gallup.  Next year's project must meet Crit:er-
ion 4.7 of Guide 44.

Page 52, paragraphs 1 and 2 - "Parent participation is a bunch of
baloney"

This quote was attributed to a staff member of the Gallup-McKinley
County School system.  The staff member in question denies that he
made such a statement.  The facts on parent participation are as
follows:

32



The Gallup administrative staff made 21 presentations in
nine eligible school area meetings and four Advisory
Committee meetings for parents, including nine organi-
zed PTA groups, two chapter meetings and four parent
meetings from April of 1970 to February 1971.  The meet-
ings involved discussions of history and purpose of
Title I ESEA, eligible schools, and participation factors.

Documents from A.C. Woodburn, superintendent of the Gallup-
McKinley County Public Schools, indicate an increased
emphasis on representative involvement of school patrons
district-wide for total school program.  This will strength-
en and support parental involvement in Title I decision
making.

The OEO Parent Advisory Committee Chairman, Mrs. Helen Zultac,
in Gallup, was involved in planning activities preparing
for the 1969-70 project.  (Our office does not have a list
of the Committee Members).  Mrs. Zultac also accompanied
Mr. Ernest Becenti (a Navajo), Gallup Board member, to a
Denver meeting on Title I ESEA in the fall of 1968.

Page 62, paragraph 4 - "Accountability of Federal and State
Agencies"

Item 3 for Title I should be that local administrators discrimi-
nate in favor of educationally disadvantaged children, including
Indian children, rather than discriminate in favor of Indians.

Item 4 - support innovative programs
Item 5 - recognizes unique needs of Indians
Item 6 - involve Indian communities.  All of the three items men-
         tioned above are valid points and certainly recommended
         by the State Department of Education for all schools
         where applicable.

Page 62, paragraph 6 - State Department of Education

Title I, by P.L. 91-230, must have comparable services from state-
local funding to justify Title I supplementation.

We support the idea of courses in Indian culture, history and
language as well as for other ethnic groups.  We encourage imput
from all ethnic groups to determine the best possible programs.

Page 63, paragraph 1 - Correlation of BIA and OE in programs for
Indians is valid.

33



## Conclusions and Observations:   Title I

In conclusion, it was observed that the Gallup-McKinley School District is meeting the intent of Congress in their Title I program.

The central office's Title I transactions are properly documented. Title I equipment inventory is recorded on a master file and each piece is identified with a corresponding tag number. Every school principal is provided with a printout of equipment assigned to his unit. Tags on equipment satisfy federal audit requirements for inventory purposes. The Title I office requires that each piece of equipment be plainly marked "TITLE I" so that the Title I coordinator can be sure it is in a Title I program.

Equipment not in current or continuing Title I programs must be transferred to ongoing programs. Equipment in participating schools no longer being experimented with should be collected and traded in on more appropriate equipment or materials.

Continued usage of the Media Center to serve all school units will necessitate a proration of pertinent expenditures to preclude supplanting of local and state funding.

Continued involvement of Parental Advisory Councils in planning Title I projects is mandatory under P.L. 91-230.

Nursing services must be examined in light of meeting State Standards for accreditation.

34



## School Food Services

The report "An Even Chance" made several references to the school food service program and the nutritional needs of Indian children (page 18). Gretchen Plagge, the state director of New Mexico Department of Education food services division reports the following findings on the investigation of conditions pertaining to the school lunch program and breakfast programs of the Gallup-McKinley County school systems:

Eight schools were visited during the two and one-half day visitation in February 1971 to the Gallup-McKinley County School District. These schools included Church Rock Elementary, Jefferson Elementary School, Indian Hills Elementary School, Gallup High School, Crownpoint Elementary School and Thoreau High School.

### Eligibility

All Indian children in the Gallup-McKinley County Schools receive benefits of Johnson-O'Malley funding for school lunch. This means that Johnson-O'Malley funds are providing 20 cents for every Indian child's lunch and are thereby classified as reduced price lunch. The National School Lunch Program provides a reimbursement of 25 cents; therefore, the Indian child is paying nothing for his lunch this year, although the school is receiving a total income of 45 cents for every lunch served. No applications were distributed to Indian children on the reservation for the current school year because it was determined that they would receive an automatic funding under the Johnson-O'Malley program. Applications for the National School Lunch Program free and reduced price policy must, by federal law, contain a question relating to the income of the family. When and if such applications are used, this information is requested in order that eligibility may be determined. Information must also be gathered as to the size of the family group as well as the number of children in service institutions and the day care centers. However, as stated, such applications were not distributed to the Gallup-McKinley County School children in schools where Indian enrollment was at or nearly 100 per cent because of the determination that all Indian children would receive the school lunch under the Johnson-O'Malley and school lunch funding arrangement.

35



## Collection System

Tickets are sold on a weekly, monthly and daily basis. These tickets are then punched each day as the student goes through the line. The tickets are available at either a full price, a reduced price or are issued to those students receiving the meal at no charge. Only a coded letter in the ticket would indicate which category a student falls in. There has been some incident of sale of tickets by the students which has created a problem with regard to report of lost tickets. Reference made in the NAACP report (page 19) to students being refused lunches if they report a lost ticket could not be substantiated in any event. However, if a student has been observed to have sold his ticket at a reduced price to some other student, necessary disciplinary action has been taken. This discipline does not include being denied food.

In a discussion with Mr. Hendrickson, principal of the Gallup High School, an alternative plan of collection was discussed. Mr. Hendrickson has indicated he intends to implement this plan for the remainder of the school year. This plan will involve keeping all tickets on file and withdrawing them as the student goes through the line. The tickets will be punched at the end of the meal and returned to the file.

In all other schools visited, a check list system was used whereby all students eating in the lunchroom were listed on a check list and as they went through the line their names were checked off. Classification as to fully paid, reduced price or free was not indicated on the list and tabulation is made in the office by school personnel. At no point was it felt that any discrimination or identification of needy students was observed or expressed.

## Participation

Out of a total enrollment of 11,390 students, approximately 9,100 students eat daily. The Gallup-McKinley County Schools feed 75 per cent of all these students at a free or reduced price. In a typical 20-day month reporting period a total of 189,337 lunches were served.

## Menus

All menus are planned in the central office under the direction of Mrs. Fern Allen, director of cafeteria service. Menus are well balanced, attractive and comply with the nutritional requirements of the National School Lunch Program.

## Quality of Food

Lunches were eaten both days in the Gallup-McKinley County

36



Schools - one day in town and one day out in the rural
school district.  The menus were identical to all other
school menus on those days, and the quality of food was
excellent.  The quantity of food distributed to schools
is adequate in every case observed.  In visiting with
cook-managers they indicated that ample food supplies
were available, with the possible exception that at times
there were problems in not getting supplies of commodities
on schedule.  This problem, however, is not isolated to
any one district but is often the result of delayed
deliveries into the state from federal sources.

Equipment

School kitchens in the entire district are well equipped,
although there is a severe limitation of space in a number
of the schools visited.  Gallup High School and Jefferson
have adequate space and excellent equipment.  Church Rock
School is very small for the number of children being fed,
although the equipment is comparable to that seen in other
local schools.  The kitchen space at Thoreau Elementary is
very limited for the number fed, and the dining room space
at Crownpoint High School shows lack of planning in the
original building stages.  The inadequate space which is
available is located in a drafty lobby area at the entrance
to the building.  These problems reflect the need for con-
sultation with specialists in related fields at the time
that architect plans are being drawn.  The equipment at
Crownpoint High School and Crownpoint Elementary School was
very adequate and up-to-date.

Breakfast Program

The Breakfast Program is in operation in all schools on the
reservations and at Red Rock School in town.  The Gallup-
McKinley County School District has been a leader in the
state as well as in the southwest region in establishing
breakfast programs for children.  The breakfast program was
visited at the Church Rock School and an excellent response
was shown by the children as well as the administration.
Mr. Hinman, principal, made the statement "the breakfast
program is one of the best things that has ever happened to
our school."  The cooks are enthusiastic about the program
and indicated that they have encouraged the children to
drink their milk, eat their cereal and in general take ad-
vantage of all food that is offered to them.

During the month of January there were 1716 breakfasts
served each day in the Gallup-McKinley school District in
eleven schools.  No charge is made to the children for this

37



breakfast in most cases. At Zuni some reduced price break-
fasts are sold, and at Red Rock there are some fully paid.
School breakfast reimbursement covers the cost of food, and
Title I has provided funds to augment the labor force and
cover some other nonfood cost in order to make this program
available to all children.

Reimbursement

An analysis of the books at the Gallup-McKinley County School
District showed that the total reimbursement received from
the National School Lunch Program for the period of September
through January 1971 totaled $201,298. Johnson-O'Malley and
BIA payments for the same period totaled $122,705. This re-
sults in a total reimbursement from these two sources of
$324,003. Title I expenses totaled $17,020 which covered
salaries of 24 employees, full-time and part-time, for break-
fast programs. The cost of food alone for a comparable period
of time has run $296,372. The labor cost for this period of
time has been $162,632. It is, therefore, obvious, that the
operating cost for this period has exceeded the income from
these two sources by approximately $85,000. Additional income,
of course, has been realized from children's payment, Title I
sources and sale of extra milk. The total operation appears
now to be operating at just a break-even point with the possi-
bility of a balance of approximately $30,000. However, the
monthly cost of operation is approximately $85,000. So a
balance of $30,000 does not represent even a sound margin for
operation in a nonprofit enterprise. It would appear that
there is no question but what Johnson-O'Malley funds as well
as all other funds are clearly being expended for the purpose
for which they have been intended.

Study Recommendation - Page 63

The recommendation made on page 63 of the report calls for a
special all-Indian Task Force to assess the nutritional status
of Indian children. Such a survey would be advantageous.
Staffing for such a program perhaps would come through one of
three sources, school lunch (under special research and study),
Johnson-O'Malley program enrichment fund or special Title I
funds. A special study has been authorized under a Department
of Agriculture program; a study of this type would do much, in
all likelihood, to encourage improved dietary patterns both in
the home and in the school. A program of this type would have
to be instituted through an application for funds from a special
program project.

38



## CONCLUSIONS

The school food service program in Gallup-McKinley County
School District has been a leader among all programs in
the state and indeed in southwestern states for some time
A report published by the Office of Navajo Economic
Opportunity (ONEO) in July 1970 entitled "Report and
Analysis of the Present Feeding Programs on the Navajo
Reservation and Recommendations for Their Improvement"
makes the following comment on page 40, Item 5: "Feeding
programs in McKinley County show that programs vary to
meet almost everyone's needs. In regard to luncheon
programs, the principal or school nurse determines who will
be eligible for a free lunch based on family income and
economic status. If a child so desires, he may pay for only
a portion of his lunch. A child may even work in the cafe-
teria in order to earn his lunch. All McKinley County Schools
affecting Navajos now operate breakfast programs. This was
made possible through ONEO assistance. Up until February
1970, the following schools did not have programs (breakfast
programs) or had programs which were using volunteer help.
They are: Crownpoint Elementary, Tohatchi Elementary, Crown-
point High, Tohatchi High, Thoreau, Church Rock and Tse
Bonito. These schools now have full-scale free breakfast
programs for everyone with all kitchen help being paid by the
ONEO. (Kitchen help as of now (February 1971) is being paid
by Title I funds and ONEO funds)". In evaluating school food
service program of the Gallup-McKinley County School District
all phases of this operation were found to be sound and in
accordance with recommended procedures and principles for
food service.

Expansion of the Breakfast Program to the Gallup City Schools
where many needy children, Indian and non-Indian, would benefit
from these services is recommended. It is felt that the chil-
dren of McKinley County, Indian and non-Indian alike, are
receiving outstanding advantages and benefits because of the
quality of the school food service as well as the interest and
commitment of personnel involved.

39



## CONCLUSIONS

It is felt that the report "An Even Chance" along with the reviews, critiques, investigations and other activities that preceded and followed the report may result in a positive contribution to education and community understanding in Gallup-McKinley County and the remainder of New Mexico. Every publicly supported institution should be reviewed by outside auditors from time to time. In order for such reviews to be beneficial to the local institution and to the local population, the integrity and dignity of the institution being reviewed must be maintained. Objectivity and a positive desire to help must be the high priority concerns of the reviewing teams.

Members of a reviewing team must be careful not to have preconceived conclusions or biases to which they consciously or unconsciously scale their questions and findings.

When only small samplings of opinions, attitudes or other subjective type material can be taken, (an unfortunate situation when so much is at stake), a reviewing team must be careful to sample all segments of an affected population and truly report both the positive and the negative responses of the sampling. It is all too easy to fall into the trap of interviewing and recording the responses of those who support the views, concepts and hypothesis of interviewer or member of the reviewing team. If a vocal minority is able to distort the true situation because the majority was not afforded the opportunity of having a spokesman, then it is possible that injustices could occur.

40

A skillful and effective investigation of a problem pre-supposes that both the investigating team and the groups being reviewed are properly oriented to the situation and that all of the people involved understand the method, purpose and objective of the investigation. To conduct an investigation without the presence of these factors certainly would lessen the validity of any investigation or study.

The ultimate result of any investigation should be better communications, better understanding and improved performance in-volving the community or institution that is being investigated. If this is not to be the ultimate purpose of a review, then time and funds should not be utilized for the purpose of conducting the review.

The Gallup-McKinley County Board of Education, the staff of the Gallup-McKinley County schools and the people of Gallup-McKinley County must continue to serve all of the children of their district with a quality educational program. Those positive sug-gestions from the report "An Even Chance" must be implemented as resources are made available. The report perhaps may be viewed as one of several resource documents that will assist the people of McKinley County, New Mexico, to continuously improve life in the county.

It is to be expected and it is suggested that other documents and resources for measuring the effectiveness of the utilization of special school funding, such as Johnson-O'Malley funds, Title I ESEA funds or any other special funds designated for particular

41



groups, be studied and that the decisions for action not be based exclusively on any one report or investigation.

RECOMMENDATIONS

1.  Even though there is ample evidence that Johnson-O'Malley funds and Title I ESEA funds have been utilized for the purposes intended, continuous proof and documentation must be maintained and be readily available so that any independent fiscal or program audit will show these facts in such a way that they will be understood by the investigator.  It is not enough that the school system be doing a good job of utilizing supplementary funds properly.  The system must also do a good job of informing the citizenry, especially the school patrons, of how these programs are being conducted.

2.  The allegation that the Gallup-McKinley County Board of Education was not representative in that it had only one Indian member is now a mute question.  The majority of the Board - three of five members - is now Indian.  The central issue, however, still remains.  The local Board of Education must communicate with, interact with and listen to the voice and the needs of all groups in both the city of Gallup and the rural areas of McKinley County.

The increased activities of a school community nature and the increase in the number of local advisory committees along with local PTA activities is commendable.  Board members should attend these meetings and participate in them as often as possible.

42



The conference room where the School Board holds its official meetings is not conducive to interaction or cross communication between the Board and the people they have been elected to serve. Something should be done to change this arrangement. Board members and school staff members should utilize every possible opportunity, county-wide and at the local level, to interpret the educational programs and to feel the pulse of the communities on educational matters. Inasmuch as there are presently several sizeable groups not represented on the School Board, extreme care should be taken to guarantee that all interested groups, factions and cultural groups have ample opportunity to present their views and their needs both to the local Board of Education and to the school staff.

3. Gallup-McKinley County is fortunate in that it has a variety of rich cultures. It would seem imperative therefore, that, in the selection of staff to operate the schools of the county, those to be employed should have a good knowledge and a strong appreciation for the several great cultures of the county.

4. It would seem to be unthinkable that educators be permitted to work in the schools of Gallup-McKinley County without a strong orientation to the land and its people. It is recommended, therefore, that an exemplary pre-orientation and a strong inservice education program in cultural awareness and inter-cultural relations be developed in the school system. The valuing of human dignity along with the appreciation and promotion of individual worth, or the positive self-image regardless of the students' family, ethnic or socio-economic background, ought to be paramount in all of the training

43



and the teaching in the schools of the county.

If there are those now employed in the school system who can
not accomodate to and assist in the growth of members of a parti-
cular group, those particular staff members should be removed from
direct contact with student or school patrons who might be affected
by the negative attitudes.  If there are staff members in positions
of influence who are guilty of prejudice or discrimination, they
should be reassigned.

If it is determined by the Gallup Board of Education that one
or more central office staff members are providing a deterrent to
communication between the Board and the community, immediate action
must be taken to eliminate the situation.  It is more than dis-
tressing to hear the Director of Special Services make derogatory
remarks in public regarding funding for public education for
Indian children.  The Gallup Board of Education must investigate
immediately this attitude and take corrective measures.

5.  It would perhaps be of benefit if the Gallup-McKinley
County School system would develop additional expertise in the
areas of community relations and in school community cooperation.
As has been mentioned previously, there has been positive progress
in this particular area within the last year.  Much yet needs to
be done.  The State Department of Education needs to provide
leadership to local school systems to develop the above capabili-
ty.  Perhaps several pilot or developmental "action research" pro-
grams to augment the efforts of local schools would assist in
increasing school community cooperation.  In researching the budget

44



for the district, it is evident that funds are available that
could be used for piloting a school community awareness program.

6. All school systems in New Mexico, including the Gallup-
McKinley County system, need to become more accountable to the
people. The Gallup-McKinley County system might do well to
begin to explore the possibility of developing a set of goals
and objectives that would be meaningful and relevant to the people
of the county. Since there is already a good network of advisory
committees established, this could be a meaningful project for
such groups who could be assisted by school staff and local board
members. The development of measurable objectives should be a
total community effort.

In developing such objectives, the Gallup Board of Education
should contact several representatives of Indian Education, such
as the Navajo Education Association, in order that the objectives
developed will result in relevant educational experiences for all
children in the district.

It is suggested that the citizens of Gallup-McKinley County
view the report "An Even Chance" as a possible warning beacon of
potential difficulties and not as an absolute mandate of the major-
ity of the county's citizens. We too often tend to treat reports
that possess the dignity of the printing device as having greater
credence. The ultimate judges of the report are the people of
the county. The printed word does suggest permanence and reliabil-
ity but conditions do change and sometimes change rapidly.

The "An Even Chance" investigating team and the New Mexico

45



State Department of Education investigation team are in a situation at two different points of time. They might even have viewed the situation with various points of view. Which of the two sets of conclusions more closely represent the actual conditions, as indicated, perhaps only the people of Gallup-McKinley know, and to date only a small fraction of the people have had the opportunity to express themselves.

Perhaps the most important question is What will the schools of Gallup-McKinley County be like in the future? This, too, can be answered only by the people. It is up to all of us to help the people find the answers.

7. It is strongly recommended that the Gallup Board of Education adopt a policy, consistent with state statutes, to provide assurance that public records are made available to investigation and the public if requested. All staff members, especially principals, should be made aware of the policy and should establish procedures for implementation.

8. The superintendent in Gallup should immediately remove cause for questioning of the use of Title I and Johnson-O'Malley funds to supplant the state and local responsibility in hiring nurses.

9. Title I equipment which was found in ineligible schools should be removed immediately before the entire Title I, ESEA allocation is jeopardized.

10. Regarding the formulating plan for the use of funds for categorical aid, the Gallup Board of Education and the administration

46



should not only look at meeting the legal intent of the various
federal laws and regulations, but it is felt that those respon-
sible for developing these projects have a moral obligation to
determine that funds appropriated for Indian children are used
for this purpose.

Those individuals on the staff of the New Mexico State
Department of Education who are charged with the responsibility
of approving such programs are directed to determine that the
moral and ethical obligations, as well as the legal obligations,
are met.

The State Superintendent will personally scrutinize each of
these projects before approval is granted.

11.  The Gallup Board of Education is directed to replace
old, outdated and unfit buildings as specified in the report
"An Even Chance" as soon as possible.  The Gallup Board of Educa-
tion should use all means at its disposal to alleviate this situa-
tion.  By merely submitting an application for P.L. 815 funds,
the Gallup Board has not met its responsibility.  The education of
children of non-property owners is the responsibility of the
Gallup Board of Education, not the federal government.

THE END



47

51



**Monica Yazzie**
IEC President

**...rgianna Desiderio**
IEC Vice-President

**Tiffany Plummer**
IEC Secretary

**Carmen Moffett**
JOM/Parent Inv.
Director

**Rebekah Nez**
IEC Treasurer

# Indian Education Committee




**Johnson-O'Malley Program**
P. O. Box 1318
Gallup, New Mexico 87305
(505) 721-1036

**IEC Regular Meeting**
**Sunday, October 15, 2017 – 3:00 pm**
**Student Support Center - Boardroom**

## AGENDA

1. **Meeting called to order:**
   a. Meeting Norms & IEC Rules
2. **Invocation:**
   a. Introductions – Paul Long and Sandra Freeland
3. **Review and Approval of Agenda:**
4. **Review and Approval of IEC Minutes:**
   a. September 10, 2017
5. **New Business:**
   a. Approval of Program Survey/Questionnaire
   b. Approval of the Chapter House Survey
   c. Approval of Student Survey for College/University Visits
   d. Approval of the IEC Monitoring Report Template
   e. Approval of the JOM Complaint Form
   f. IEC Workshop in Farmington, NM (Repeated Workshop) – October 18-19, 2017
   g. New Mexico Indian Education Advisory Council/Government-to-Government Summit, November 19-21, 2017
   h. Removal of IEC member
   i. Approval of student travel allocations for students to attend the NNJOM Native Youth Conference in Albuquerque, December 8-9, 2017.

6. **Old Business:**
   a. Maximum Indian Participation Parent Policy
   b. IEC By-Laws – Proposed Revisions (Prorated IEC Stipend)

7. **Reports:**
   a. Indian Education Committee Member reports: 1) NIEA report
   b. Work Sessions for September 28 & 29, 2017 reports:
   c. IEC Officers report:

*See em*



PLAINTIFF'S EXHIBIT
No. 2

Sunday,
10/15/17

       i. IEC President - 1) GMCS Live Stream Nov. 8th 2) KGAK Live Forum on Nov. 3 at 10:00 am 3) NIEA Report
      ii. IEC Vice President – November Native American Month
     iii. IEC Secretary – JOM Binders
     iv. IEC Treasurer – NIEA Report

  d. JOM Director:
       i. Annual JOM Report update
      ii. 40th Day Count – CIBs update
     iii. NIEA Report

  e. Title VI Indian Education Director/Bilingual Coordinator Report: 1) Navajo Language Program Update 2) Title VI Budget

  f. Pauletta White, Assistant Superintendent Report: 1) Title VII Impact Aid Indian Policies and Procedures, 2) New Mexico Indian Education Advisory Council/Government-to-Government Summit, November 19-21, 2017.

  g. GMCS Superintendent Report:

8. **Announcements:**

  a. Board of Education meeting – October 16, 2017 at 6:00 pm at Chee Dodge Elem.
  b. New Mexico School Board Association Region I Meeting – October 18, 2017, SSC Boardroom
  c. New Mexico Indian Education Advisory Council/Government-to-Government Summit, November 19-21, 2017.

9. **Next Regular IEC Meeting:** November 11, 2017 at 9:00 am

10. **Adjournment**

Sun
10/15/17

Brenda G. Chicharello
P.O. Box 2774
Gallup, NM 87305

CONFIDENTIAL

November 4, 2017

Attention Indian Education Officers:
Monica Yazzie- IEC President        PO BOX 3031 Gallup, NM 87305
Georgianna Desiderio -IEC Vice-President    PO BOX 1266 Church Rock, NM 87311
Tiffany Plummer- IEC Secretary      email: watsonplum04@gmail.com
Rebekah Nez- IEC Treasurer         PO BOX 3976 YATAHEY, NM 87375

Dear IEC Officers,

On October 20, 217 I received your mailed letter dated October 16, 2017.
Enclosed is a copy of your letter dated October 16, 2017.

1. Paragraph one states, "The purpose of this letter is to notify you that On Sunday 15, 2017 at 3:00 pm in the Student Support Center, Boardman, the Indian Education Committee met for regular IEC Meeting and voted 8 in favor, 2 abstained, and 4 against to remove you from the IEC due to violations of the IEC Code of Conduct."

**I refer to statement 1 above I'm objecting to the removal of my membership from the Indian Education Committee.  The reason is stated as follows:**

- *I wasn't notified in writing prior to the October 15, 2017 2017, Regular IEC Meeting of the charge and the specific details of the violations.  Nor did I receive and made aware of any formal complaints against me during that time.*
- *The IEC By-laws does not state a specific form of what constitute as a violation is.*
- *The IEC By-Laws does not state a violation process to act on when IEC Member who is in violation.*
- *The IEC By-Laws does not state a removal process section explaining how, when and who can remove IEC Members.*
- *In the IEC By-laws does have a complaint process to hear complaints however there is no authority given to act on complaints.*
- *The Indian Education Committee does not have authority to remove IEC Members because it is not stated specifically in the IEC By-Laws to do so.*

2. Second paragraph states "On October 2, 2017, a letter was mailed to you summarizing two requests made by the IEC officers and myself requesting for a meeting with you to address numerous concerns and allegations.  On both occasions you declined to meet with the IEC Officers, and in one instance, you claimed that you could not meet with the IEC Officers due to conflict of interest."

1



PLAINTIFF'S EXHIBIT
No. 3

CONFIDENTIAL

I refer to the statement 2 by chronological dates when I sent IEC Officers several emails:
    (Exhibits 1-8)

- Saturday, August 5, 2017 Pro rate
- Monday, September 11, 2017 Info
- Monday, September 11, 2017 Questions? Re: Questions Wednesday, September 13, 2017
- Monday, September 18, 2017 Re: Questions—ON THE RECORD
- Tuesday, September 26, 2017 Sept 28, 2017 IEC Work Session
- Friday, September 29, 2017 Formal Complaints
- Monday, October 9, 2017 Fw: Formal Complaints
- Monday, October 9, 2017 Re: Letter of Concerns

a.) *Enclosed email on September 29, 2017 at 8:48 pm, (Formal Complaints) to the IEC Officers states "Good Evening IEC Officers, I'm writing in regards to our conversation at 7:13 pm on September 29, 2017 after the adjournment of the IEC Work Session in the GMCS Board Room. I did go through the proper chain of command in regards to writing to the IEC Officers trying to remedy my concerns and I didn't hear a response from any of the IEC Officers. With that being said I took my concerns and issue to the upper level as a parent. My formal complaints are file as a parent therefore it will be handle with proper authorities. Thank you for your understanding in regards to this matter. (See Exhibit 6)*

3.  Second paragraph third sentences states "The October 2, 2017 letter, also dated stated that if you were not able to meet on the scheduled date, which was set for October 9, 2017, for you to contact me with a date and time to reschedule the meeting no later than October 6, 2017. After October 6, 2017, you did not communicate/provide a date and time that would work for you to meet with the IEC Officers As a result, and due to your refusal to meet and resolve all concerns and allegations, the IEC Officers made a recommendation to the IEC to remove you from the membership."

I refer to the statement 3 on September 29, 2017, I revealed to the IEC Officers that I already filed formal complaints regarding all my emails. This is the reason why I stated conflict of interest, because I release my documents to several New Mexico State Agencies. Disclosure of any information to the several formal complaints would compromise the privacy and confidentiality circumstance. I did not have any other choice, but to file formal Complaints. I did try to resolve my concerns with the IEC Officers by sending several emails dating back from August 5, 2017. When I didn't receive a response from the IEC Officers since August 5, 2017 I took matters to the next level. Fifty-nine days later the IEC Officers wants to finally meet with me to discuss my concerns and I couldn't disclose any information.

4.  End of the Letter states "Your school, as well as any other school that might have been assigned to you to assist, will be notified regarding your membership status with the JOM Indian Education Committee. Thank you for your service to the Indian Education Committee."

I refer to the statement 4 this wrongful charge was unreasonable without just cause, this is a breach of an implied covenant of good faith and fair dealing. I want my membership to be

CONFIDENTIAL

reinstate and I should not have been subject to this immoral conduct and unreasonable treatment from the IEC Officers.

I respectfully request to be immediately reinstate my membership to the Indian Education Committee.

Sincerely,

Brenda G. Chicharello

Enclosure:
Exhibit A- Email on *September 29, 2017 Formal Complaints*
    (Exhibits 1-8)
1. Saturday, August 5, 2017 Pro rate
2. Monday, September 11, 2017 Info
3. Monday, September 11, 2017 Questions?
4. Monday, September 18, 2017 Re: Questions—ON THE RECORD
5. Tuesday, September 26, 2017 Sept 28, 2017 IEC Work Session
6. Friday, September 29, 2017 Formal Complaints
7. Monday, October 9, 2017 Fw: Formal Complaints
8. Monday, October 9, 2017 Re: Letter of Concerns

3

*Exhibit 1*



| | Search Mail | Search Web | Brenda Ch... | Account Info ▾ Go | Sign Out | Home |

Switch to the newest Yahoo Mail

**Inbox** | Contacts | Notepad | Calendar

Compose

Inbox (1116)

Drafts (26)    Delete   Reply   Reply All   Forward   Actions ▾   Apply   Previous   Ne:

Sent

Spam (8)    [Empty]

Trash (296)    [Empty]

My Folders    [Edit]

Archive

Unwanted

American...    Amex Hilton Honors™ Surp...
Sponsored    Official Site. 75,000 Hilton

**Fw: Pro rate**

Thursday September 21 2017 7 42 AM

From: "Brenda Chicharello" <brenchic_99@yahoo.com>

To: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>

"Georgianna Desiderio" <teddybearmatt1105@gmail.com>

"Monica Yazzie" <monicayazzie@yahoo.com>

"Rebekah Nez" <lovelyone85202@yahoo.com>

"Tiffany Plummer" <watsonplum04@gmail.com>

Cc: "Brenda Chica" <brenchic_99@yahoo.com>

Raw Message  Printable View

GAMISS

ROSEWE

CONFIDENTIAL

—- On Sat, 8/5/17, Brenda Chicharello <brenchic_99@yahoo.com> wrote:

> From: Brenda Chicharello <brenchic_99@yahoo.com>
> Subject: Pro rate
> To: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>, "Elvira Silago"
> <silago@me.com>, "Georgianna Desiderio" <teddybearmatt1105@gmail.com>,
> "Monica Yazzie" <monicayazzie@yahoo.com>
> Cc: "Alice Dodson" <alicedodson@nndode.org>, "Brenda Chica"
> <brenchic_99@yahoo.com>, "Eleanor Thomas"
> <eleanorthomas@nndode.org>, "Jonas Yazzie" <jonasyazzie@nndode.org>
> Date: Saturday, August 5, 2017, 3:28 PM
> MEMO
>
> TO:IEC Officers
>
> FFROM: Brenda Chicharello
>
> DATE: August 05, 2017
>
> Re; Pro-Rate
>
> Cc: Carmen Moffett-JOM Coordinator
>      The NNJOM Office
>
> _____
>
> MESSAGE
> I have concerns why was a Pro Rate
> brought up by Carmen Moffett when it wasn't on the agenda
> which violates the New Mexico Meetings Act. Only when the
> IEC Committee can vote on before any action can be taken on
> by the committee. Carmen Moffett as the JOM
> Coordinator wants to make recommendation that needs action
> then it needs to be an Action Item on the IEC Agenda posted
> 72 hours. If anyone file a complaint with NM Attorney
> General for violating NM Open Meetings Act the IEC Committee
> can be fined if we violate the law.
>
> I asked Carmen Moffett at 1:45 pm to
> see the guideline for this Pro-Rate. Ms. Moffett replied
> "she didn't have one until the officers make one."
> I replied " why is Pro-Rate being
> enforced? I will get hold of NNJOM about this matter on
> Monday, August 07, 2017."
> Ms. Moffett said "ok"
>
> At the August 05, 2017 IEC Regular
> Meeting Carmen Moffett report today that she talked with
> GMCS Business office prior to todays
> meeting that if it doesn't need say in our IEC By-Laws
> regarding this Pro-Rate.
> The GMCS Business is soliciting
> Pro-Rate then the Business Office should have a guideline
> since Ms. Moffett is seeking info now when IEC By-Laws was
> approve this past June 2017 by the GMCS School Board
> Meeting.  Why is this being address now?
>
> Note in the past Paulette White used

Exhibit 1

> the IEC By-laws to not approve IEC Stipends if IEC Members
> did sign out on the sign out sheet.
>   i did point that out at today's
> meeting that IEC Member Sarita did get paid several stipends
> because she didn't sign out.  Ms. Moffett Supervisor and
> Ms. J.Hanks would not approve anything unless it was written
> in the IEC By-laws.
> How can this Pro-Rate be enforced?
>   I need clarification from NNJOM Office
> since Pro-Rate is being enforced without proper right
> procedures were taken beforehand.  At the NNJOM Negotiation
> this was not a finding and the document presented by Eleanor
> Thomas said it would follow the Navajo Nation Procurement.
> Ms. Moffett, Ms. Hanks and Mr. Hyatt were in attendance at
> this meeting.
> With that being said why is Ms. Moffett
> going to the GMCS Business Office and not Navajo Nation JOM
> Office?
>
> Also, I witness Ms. Moffett telling Ms.
> Carter that she had to fill out another forms to put
> pro-rate since she was late.  Ms. Carter asked Ms. Moffett
> " did you get my text?"  Ms. Moffett replied " yes, I did"
>
>   Loria Carter told me  " she would
> be late due to the roads condition.  With this Pro-Rate
> penalize you even when you contact beforehand that an
> emergency situation came up like road closure due to weather
> or unforeseen circumstances.  The IEC Committee needs to
> see a guideline before approving Pro-Rate because it doesn't
> deal with emergency or unforeseen circumstances. I'm being
> penalize now."
>
>

Compose                    Delete   Reply   Reply All   Forward   [ Actions        ▾ ]  [ Apply ]   Previous   Next

CONFIDENTIAL



Inbox | Contacts | Notepad | Calendar

Compose

Search Mail | Search Web   Brenda Ch... | Account Info ⌄ Go | Sign Out | Home

Switch to the newest Yahoo Mail

Inbox (1092)
Drafts (26)
Sent
Spam (8)        [Empty]
Trash (320)     [Empty]

My Folders      [Edit]
Archive
Unwanted

Delete | Reply | Reply All | Forward | Actions ⌄ | Apply | Previous | Ne:

Discover...   Is there a Discover card out...
Sponsored     Give us some quick info, and

**Fw: Info**

From: "Brenda Chicharello" <brenchic_99@yahoo.com>          Monday, September 11, 2017 4:44 PM
To: "Brenda Chica" <brenchic_99@yahoo.com>

Raw Message  Printable View

— On Mon, 9/11/17, Brenda Chicharello <brenchic_99@yahoo.com> wrote:

> From: Brenda Chicharello <brenchic_99@yahoo.com>
> Subject: Info
> To: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>, "Monica Yazzie"
> <monicayazzie@yahoo.com>, "Georgianna Desiderio"
> <taddybearmat1105@gmail.com>, "Rebekah Nez"
> <lovelyone85202@yahoo.com>
> Cc: "Brenda Yazzie" <byazzie10@gmail.com>
> Date: Monday, September 11, 2017, 5:33 PM
> MEMO
>
> TO: IEC Officers
>
> FROM: Brenda Chicharello
>
> DATE: September 11, 2017
>
> Re; information
>
> Cc; bc file
>
> ——————————————————————
>
> ————————————————
>
> MESSAGE
>
> 1.) On August 31, 2017, IEC Work
> Session I did ask for a Navajo Chapter House Representation
> List for which IEC Members represent what chapters?
> At that meeting I was told by Ms.
> Moffet that it was mailed out I did look into the package
> and the IEC Membership Listing does say Chapter/School
> Representative
> column however it listed the schools,
> but not the Navajo Chapter House they represent.
> Brenda B was asking who represents
> which chapters too.  I did ask for a listing and I was
> told it was in the package mailed out.
>
> May you please make a IEC Navajo
> Chapter House Representative List, thanks.
>
> 2.) Elvira Silago is the IEC Rep for
> the Chief Manuelito Middle School.  I'm the alternative
> IEC Rep for the Chief Manuelito Middle School.
> What happen with Ms. Silago?  It
> was announce  yesterday (9-10-17) at the Regular IEC
> Meeting that Ms. Silago resign.
> Did she resign as the Vice President
> Position or from being an IEC Member?
>
> The reason I ask is there a Parent
> Symposium will be at 6:15 pm Tuesday, Sept 12, at Chief
> Manuelito Middle School.
> The Gifted and Talented Education
> Program, athletic eligibility, school attendance and how to
> use GMCS Power School system will be discussed.
> Pizza, refreshments and vouchers for
> free eyewear will be served.
>
> Not sure what's going on Please let me
> know soon?  I do work with the school principal
> Mr. Wargo and attend school meetings like the Parent
> Advisory Council.
> Thanks.
>

Storage Units Near You

Wool Trench Coat
DETACHABLE SCARF

Newchic

CONFIDENTIAL

> 3.) On the IEC Meeting Minutes the IEC
> Members need to be listed by full names on the meeting
> minutes. Also names of speakers and individual who make
> reports too.
> For the August 5, 2017 IEC Meeting
> Minutes can you make that change, Thanks.
>
> Please get back to me soon..
> Oh yeah I don't have the newly elected
> IEC Secretary Tiffany's email address can you forward me her
> email address.
> Thank you.
>
>
>
>

Compose                    Delete   Reply   Reply All   Forward   [Actions ▾]  [Apply]   Previous   Next

CONFIDENTIAL

Exhibt 3



Good Morning Brenda

You were at the meeting last month when the IEC members proposed that, and last weeks meeting I clarified that in front of you, the members were in agreement, not me. So at the next meeting ask your questions to the board members. I would be in the same board like every late person and be prorated if I'm late. If you have anything to ask, please ask at the meeting.

Monica

On Wednesday, September 13, 2017, 4:14:36 PM MDT, Brenda Chicharello <brenchic_99@yahoo.com> wrote:

Monica,

I haven't heard back from you, could you please respond back to my two questions.
Please I need this information as soon as possible.

Thanks,
Brenda.C
_____

On Mon, 9/11/17, Brenda Chicharello <brenchic_99@yahoo.com> wrote:

Subject: Questions?
To: "Monica Yazzie" <monicayazzie@yahoo.com>
Cc: "Brenda Chica" <brenchic_99@yahoo.com>
Date: Monday, September 11, 2017, 3:54 PM

Monica,

I had two questions about the pro rate
from yesterday (9-10-17) Regular IEC Meeting?
During the meeting you said " the IEC
Member ask for the pro rate" With that being said by you.

My two questions are:

1. When did the IEC Members ask for
this pro rate on what date?

2. Who of the IEC Members ask you for
the pro rate?

I will be waiting to hear back from you
soon.

Thank you,

Brenda Chicharello

CONFIDENTIAL

| Inbox | Contacts | Notepad | Calendar | | Search Mail | Search Web | Brenda Ch... | Account Info ▼ | Go | Sign Out | Home |

Compose

Inbox (1312)
Drafts (24)
Sent
Spam (17)        [Empty]
Trash (54)       [Empty]

My Folders       [Edit]
Archive
Unwanted

Switch to the newest Yahoo Mail

Delete    Reply    Reply All    Forward    Actions ▼    Apply    Previous    Next

**Spectrum**
Sponsored

**Unpack with Spectrum**
Moving is hard enough.
Getting Spectrum TV +

### Re: Questions?

Monday, September 18, 2017 6:43 PM

From: "Brenda Chicharello" <brenchic_99@yahoo.com>
To: "Brenda Chicharello" <brenchic_99@yahoo.com>
"Monica Yazzie" <monicayazzie@yahoo.com>
Cc: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>
"Rebekah Nez" <lovelyone85202@yahoo.com>
"Georgianna Desiderio" <teddybearmat1105@gmail.com>

Raw Message  Printable View

TO: Monica Yazzie, IEC President

FROM: Brenda Chicharello, Parent

DATE: September 18, 2017

Re: Questions for Pro Rate

Cc; bc file

--------------------------------------------------------

Message:

Hello Monica,

I need you to clarify in writing so thank you for doing so and now it is noted in writing from you to be on the Record.

Any questions please feel free to contact me via email.

Thanks..

----------------------------

On Fri, 9/15/17, Monica Yazzie <monicayazzie@yahoo.com> wrote:

Subject: Re: Questions?
To: "Brenda Chicharello" <brenchic_99@yahoo.com>
Cc: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>, "Rebekah Nez" <lovelyone85202@yahoo.com>,
"Georgianna Desiderio" <teddybearmat1105@gmail.com>
Date: Friday, September 15, 2017, 9:41 AM

Good Morning
BrendaYou were at the meeting last month when the IEC members proposed that, and last weeks meeting I clarified that in front of you, the members were in agreement, not me. So at the next meeting ask your questions to the board members. I would be in the same board like every late person and be prorated if I'm late. If you have anything to ask, please ask at the meeting.
Monica

CONFIDENTIAL

On Wednesday, September 13, 2017,
4:14:36 PM MDT, Brenda Chicharello
<brenchic_99@yahoo.com> wrote:

Monica,

Sept 28, 2017 IEC Work Session

Inbox | Contacts | Notepad | Calendar

Search Mail | Search Web | Brenda Ch... | Account Info ▾ | Go | Sign Out | Home

Switch to the newest Yahoo Mail

Delete | Reply | Reply All | Forward | Actions ▾ | Apply | Previous | Next

**Intuit QuickBooks**
Sponsored

**QuickBooks Online**
Join the 2 million+ global QuickBooks Online

### Sept 28, 2017 IEC Work Session

Tuesday, September 26, 2017 11:21 AM

From: "Brenda Chicharello" <brenchic_99@yahoo.com>
To: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>
"Georgianna Desiderio" <teddybearmat1105@gmail.com>
"Monica Yazzie" <monicayazzie@yahoo.com>
"Rebekah Nez" <lovelyone85202@yahoo.com>
"Tiffany Plummer" <watsonplum04@gmail.com>
Cc: "Brenda Chica" <brenchic_99@yahoo.com>

Raw Message Printable View

TO: IEC Officers

FROM: Brenda Chicharello

DATE: September 26, 2017

Re: Sept 28, 2017 IEC Work Session

Cc: bc file

------------------------------------------------------------
------------------------------------------------

MESSAGE:

Good Afternoon,

Hello, I would like to say sorry for not showing up to the IEC Orientation on Sunday, Sept 24, 2017 I had a Family Emergency.

I have some question to what other documents will be discussed at the IEC Work Session, 9/28/17? Please let me know what other documents this is and I would like a copy of the agenda for this work session too. Thanks.

Also, I have been ask by several communities members to have a establish formal seating area at all IEC Meetings for visitors. Therefore I'm requesting for this action to be in place by verbal requests from several communities members who would like to see this in place especially at the IEC Work Sessions and Sub Committee Meetings too. Many people feel out of place at IEC Work Sessions and Sub Committee Meetings because there is no formal place for visitor to sit and does make people not welcome.

Any questions please email me.

Thank you.

Delete | Reply | Reply All | Forward | Actions ▾ | Apply | Previous | Next

CONFIDENTIAL

Exhibit 6



TO: IEC Officers
   Monica Yazzie, Georgianna Desiderio, Rebekah Nez, Tiffany Plummer

FROM: Brenda Chicharello
   Parent

DATE: September 29, 2017

Re; Formal Complaints

Cc: bc, nma

---

Message:

Good Evening IEC Officers,

I'm writing in regards to our conversation at 7:13 pm on September 29, 2017 after the adjournment of the IEC Work Session in the GMCS Board Room.

I did go through the proper chain of command in regards to the writing to the IEC Officers trying to remedy my concerns and I didn't hear a response from any of the IEC Officers. With that being said I took my concerns and issues to the upper level as a parent.

My formal complaints are file as a parent therefore it will be handle with proper authorities.

Thank you for your understanding in regards to this matter.

CONFIDENTIAL

Re: Letter of Concerns - Inbox Yahoo Mail

Exhibit 7

| Inbox | Contacts | Notepad | Calendar |
|---|---|---|---|

Search Mail   Search Web   Brenda Ch...   Account Info ▼ Go   Sign Out   Home

Compose

Inbox (1312)

Drafts (24)

Sent

Spam (17)   [Empty]

Trash (54)   [Empty]

My Folders   [Edit]

Archive

Unwanted

Delete   Reply   Reply All   Forward   Actions ▼   Apply   Previous   Next

Switch to the newest Yahoo Mail

**TD Ameritrade**   **Trade on the go with TD Ameritrade Mobile ...**
Sponsored   Options. Futures. Forex. Stocks. Shall we go on?

### Re: Letter of Concerns

Monday, October 9, 2017 5:45 PM

**From:** "Brenda Chicharello" <brenchic_99@yahoo.com>

**To:** "Brenda Chicharello" <brenchic_99@yahoo.com>

"Monica Yazzie" <monicayazzie@yahoo.com>

**Cc:** "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>

"Rebekah Nez" <lovelyone85202@yahoo.com>

"Georgianna Desiderio" <teddybearmat1105@gmail.com>

"Tiffany Plummer" <watsonplum04@gmail.com>

"Mike Hyatt" <mhyatt@gmcs.k12.nm.us>

Raw Message  Printable View

Monica,

I am unable to speak with you or any of the IEC Officers concerning all my formal complaints due to Conflict of Interest.

Thank you for your understanding in this matter.

Brenda Chicharello
_____

On Mon, 10/2/17, Monica Yazzie <monicayazzie@yahoo.com> wrote:

Subject: Letter of Concerns
To: "Brenda Chicharello" <brenchic_99@yahoo.com>
Cc: "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>, "Rebekah Nez" <lovelyone85202@yahoo.com>,
"Georgianna Desiderio" <teddybearmat1105@gmail.com>, "Tiffany Plummer"
<watsonplum04@gmail.com>, "Mike Hyatt" <mhyatt@gmcs.k12.nm.us>
Date: Monday, October 2, 2017, 2:08 PM

Good Afternoon Ms.
Brendal have a attached a letter to meet you, we
have some concerns that needs to be
addressed. Thank you,
Monica

Delete   Reply   Reply All   Forward   Actions ▼   Apply   Previous   Next

**TO THE**

CONFIDENTIAL

*Exhibit 8*





BRILLIANT EARTH

*Shape Your Future*

CREATE YOUR OWN RING



LILY GAL

| | | |
|---|---|---|
| Inbox | Contacts | Notepad | Calendar |

Compose

Inbox (1112)

Drafts (26)

Sent

Spam (10)    [Empty]

Trash (126)    [Empty]

My Folders    [Edit]

Archive

Unwanted

Switch to the newest Yahoo Mail

Delete   Reply   Reply All   Forward   Actions ▾   Apply   Previous   Next

DIRECTV — Sponsored   Get DIRECTV — You like TV. We have TV. Lots

**Fw: Formal Complaints**    Monday, October 9, 2017 6:04 PM

From:  "Brenda Chicharello" <brenchic_99@yahoo.com>

To:  "Georgianna Desiderio" <teddybearmat1105@gmail.com>

"Monica Yazzie" <monicayazzie@yahoo.com>

"Rebekah Nez" <lovelyone85202@yahoo.com>

"Tiffany Plummer" <watsonplum04@gmail.com>

Cc:  "Brenda Chica" <brenchic_99@yahoo.com>

"Carmen Moffett" <cmoffett@gmcs.k12.nm.us>

"Mike Hyatt" <mhyatt@gmcs.k12.nm.us>

Raw Message Printable View

CMEMO

TO: IEC Officers
 Monica Yazzie, Georgianna Desiderio, Rebekah Nez, Tiffany Plummer

FROM: Brenda Chicharello
 Parent

DATE: October 09, 2017

Cc: Carmen Moffett, Mike Hyatt and bc file

MESSAGE:

I just recently open Monica Yazzies's email attachment letter dated October 02, 2017. In Monica's email stated that I said no to meeting with the IEC Officers. I was in a hurry and that wasn't the reason why I didn't speak with the IEC Officers.

I have sent several emails to the IEC Officers dating back to August 06, 2017. It has been 53 calendar days since I sent the first emails that I didn't hear back from any of the IEC Officers acknowledging my emails. I did hear back from Ms. Moffett however I was waiting to hear a response back from any of the IEC Officers. Ms. Moffett is the JOM Coordinator, not the IEC Officers who needed to answer back to all of my emails. Since 53 calendar days past I took matters to the next level concerning all my emails dating back to August 6, 2017 to the next level as filing formal complaints as a parent.

I tried to go through the IEC Officers and I didn't get no response until 53 calendar days later on September 29, 2017 which I already submitted all of my email documentations for the formal complaints process.

All the emails are in my formal complaints and therefore I'm not allowed at this time to discuss with the IEC Officers due to the Confidentiality and is ethnically would be a Conflict of Interest.

Also, on September 10, 2017, Mike Hyatt did make a announcement at the IEC Regular Meeting in the GMCS Board Room, "that he didn't want to get involved in any way when it comes to the IEC Complaints."
"I agree with Ms. Chicharello that I don't want to anything to due with IEC Complaints that should be handle within IEC.
Please do not give IEC's authority away.

Again from my email dated September 29, 2017 that I filed my Formal Complaints as a Parent not as a IEC Member. I already tried to go through the IEC Officers and I didn't get anywhere. Plus at the Sept 29, 2017 IEC Work Session I didn't appreciated the way Monica Yazzie and Carmen Moffett treat me with disassociation disrespecting me as a parent. As parent I have every right to voicing my concerns and to question the accountability to the IEC Officers/JOM Coordinator why certain things were not done or not handle appropriately.

CONFIDENTIAL

Thank you for your understanding and appreciate the seriousness as role model as IEC Officers and JOM Coordinator.

--- On Fri, 9/29/17, Brenda Chicharello <brenchic_99@yahoo.com> wrote:

> From: Brenda Chicharello <brenchic_99@yahoo.com>
> Subject: Formal Complaints
> To: "Georgianna Desiderio" <teddybearmatt1105@gmail.com>, "Monica Yazzie" <monicayazzie@yahoo.com>, "Rebekah Nez" <lovelyone85202@yahoo.com>, "Tiffany Plummer" <watsonplum04@gmail.com>
> Cc: "Brenda Chica" <brenchic_99@yahoo.com>, "Carmen Moffett" <cmoffett@gmcs.k12.nm.us>
> Date: Friday, September 29, 2017, 8:48 PM
> TO: IEC Officers
>      Monica Yazzie,
> Georgianna Desiderio, Rebekah Nez, Tiffany Plummer
>
> FROM: Brenda Chicharello
>          Parent
>
> DATE: September 29, 2017
>
> Re; Formal Complaints
>
> Cc: bc, nma
>
> ————————————————————————————
>
> Message:
>
> Good Evening IEC Officers,
>
> I'm writing in regards to our
> conversation at 7:13 pm on September 29, 2017 after the
> adjournment of the IEC Work Session in the GMCS Board Room.
>
> I did go through the proper chain of
> command in regards to the writing to the IEC Officers trying
> to remedy my concerns and I didn't hear a response from
> any of the IEC Officers.  With that
> being said I took my concerns and issues to the upper level
> as a parent.
>
> My formal complaints are file as a
> parent therefore it will be handle with proper authorities.
>
> Thank you for your understanding in
> regards to this matter.

Compose          Delete   Reply   Reply All   Forward   Actions ▾   Apply   Previous   Next

CONFIDENTIAL

- refrain from any personal abuse ie., via social media, verbal mental, behavior and slander. This will result in immediate removal from IEC membership

*Wed 6/28/17*

## 501   Meeting Norms

   a).  Put phone on silent
   b).  Stay focus on Agenda
   c).  Respect all opinions
   d).  No side bar talking

## 502   Complaint Process

**Step 1:  The IEC member will complete a formal IEC complaint form as it relates to one of the following:**

- IEC Member to IEC member
- IEC Member to IEC Officer
- IEC Member/Officer to Administration (use GMCS Grievance Form & Process)

**Step 2:  The complaint will be filed with the appropriate individual:**

- IEC Members to Member complaint will be filed with JOM Directorand IEC Officers.
- IEC Member to IEC Officers complaint will be filed with JOM Directorand IEC Member selected at random.
- IEC Member to Administration will follow GMCS Complaint process.

**Step 3:**

Upon receipt of a written complaint, the designated individuals shall within ten (10) working days, make an investigation, document and submit its findings to the complainant.  If the complaint cannot be resolved within the specified time, then the designated individual may request additional time from the complainant.

**Step 4:**

Every effort will be made by the designated individuals to resolve the complaint.  If the complaint cannot be resolved to the satisfaction of the complainant, the designated individuals shall forward the complaint with all investigative documents, findings and/or recommendations to the Indian Education Committee designated hearing committee for review and action. The findings shall be final.

# ARTICLE VI
# GRIEVANCE PROCEDURES

CFR 273.18 – Additional requirements for education plan

04/20/17

PLAINTIFF'S EXHIBIT
No. 4



**GALLUP-MCKINLEY COUNTY SCHOOLS**
**Johnson O'Malley Program**
*Carmen Moffett, Director*
PO Box 1318
Gallup, New Mexico 87305
(505) 721-1036



Brenda Chicharello
PO Box 2774
Gallup, NM  87305

December 6, 2017

Dear Ms. Chicharello,

The purpose of this letter is to respond to your letter in which you are requesting to be reinstated as an Indian Education Committee member.   As you know, you were voted by the Indian Education Committee to be removed from the Committee.  This was voted by the IEC members and not by the IEC Officers alone.  Thank you.

Sincerely,

Monica Yazzie
IEC President

PLAINTIFF'S EXHIBIT No. 5

navajo nation jom                                          Account Info ⌄    Go

Inbox

Back to Search            Delete      Spam    Action: ⌄   Apply

**Census 2020 Drawing $500 Prepaid Mastercard®**

Fill out your 2020 Census and submit your name, address, and confirmation number at NewMexico2020.org to receive your $20 prepaid Mastercard & be entered to win $500.

Virtual Account is issued by MetaBank® N.A., Member FDIC, pursuant to license by Mastercard International Incorporated. Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated. No cash access or recurring payments. Can be used where Debit Mastercard is accepted for online, phone/mail orders, or in stores that accept mobile wallet. Valid for up to 12 months; funds do not expire and may be available after the expiration date; fees may apply. Terms and conditions apply.

*Paid for by Independent NM Counties & Organizations*

| Inbox | 999+ |
| Drafts | 33 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

Folders    Edit  Hide

+ New folder

Unwanted

### June 13, 2017 Complaint                    brenchic_99@yah.../Sent

Ⓑ                                             Jun 30, 2017 at 9:11 PM

                                                  Print   Raw message

**Brenda Chicharello** <brenchic_99@yahoo.com>
To: Elvira Silago <silago@me.com>,
Georgianna Desiderio <teddybearmat1105@gmail.com>,
Monica Yazzie <monicayazzie@yahoo.com>
Cc: Brenda Chica <brenchic_99@yahoo.com>,
Brenda Yazzie <byazzie10@gmail.com>,
Carmen Moffett <cmoffett@gmcs.k12.nm.us>

MEMO

TO:  IEC Officers
        (Monica Yazzie, Elvira Silago, & Georgianna Desiderio )

FROM: Brenda Chicharello
        (Former IEC Vice-President )

DATE: June 30, 2017

Cc: Carmen Moffett and Brenda Yazzie

Re; June 13, 2017 -Carmen Moffett, JOM Program Manager complaint against IEC Member, Brenda Yazzie.

-----------------------------------------------------------------
-----------------------------------------------

MESSAGE:

IEC  Officers,

As you know my term ends today as an IEC Officer, but I would like to bring forth many concerns in regards to this matter.

1. ) My first issue with a complaint from an administrator against an IEC Member.  I look in the IEC By-Laws to find where this issues addresses this matter.

502 Complaint Process-  Step 1: No where does it states and address Administration to IEC Member. Plus there's no process.

Article VI Grievance Procedures -
(c) Contains procedure for hearing grievances from Indian students, parents, community members, and tribal representatives relating to the program(s) contracted under this part.  Such procedures shall provide advance notice of the hearing.

2.) My second concern relates to why was the complaint form only mailed to the IEC Officers. Any complaints or grievances there are rules and laws put in place to notify the person who is being made complaints on. (Example Court System)  Also Brenda Yazzie has every right to receive a copy of the complaint made against her.

today I text Ms. Moffett to mail a copy of her complaint to Brenda Yazzie.  I feel that Ms. Yazzie should be made aware and a copy of the complaint should be sent to her as well.

3.) My third concern is the time frame when the  IEC Officers was mailed out this complaint on June 13, 2017.

However the IEC By-Laws 502 Complaint Process that any complaints stated in Step 3:  Upon receipt of a written complaint, the designated individuals shall within ten (10) working days, make an investigation, document and submit its findings to the complaint.  If the complaint cannot be resolved



**PLAINTIFF'S EXHIBIT**

NO.

within the specified time, then the designated individual may request additional time from the complainant.

A response from the IEC Officers should have been given by June 27, 2017 that is ten working days. I was waiting to hear from the IEC President to call an Officer Meeting to address this matter. Since June 30, 2017 is the end of my term I respectfully ask the IEC Officers to handle this past due and urgent matter to resolve these issues.

4.) Ms. Moffett claims that "Brenda Yazzie, IEC member, emailed a series of emails to IEC Members, Interim Sup, Mike Hyatt, and Board member, Kevin Mitchell. ( See attached documents)."

My Concern:
Page 1 Email -- A vendor did not get paid for Services at Twin lakes elementary.  What Happened? This z his response:
THIS Z HIS RESPONSE- I don't think this is Brenda Yazzie's comments because it clearly states This z his response: meaning this would be coming from the vendor himself it sounds like it.  So the vendor must have put this out there and looks like Ms. Yazzie shared it with IEC Members.

"The emails made allegation against me and encouraged, from my view, friction between the IEC Members and I." Ms. Moffett
My Recommendation:
Please look into what allegations if those words came from the vendor himself?  Also what can IEC Officers do when people put their own thought out there on social media and if a IEC Member share that person views to the IEC committee because its already out there ...

"This type of behavior is inappropriate and unprofessional" Ms. Moffett
My Recommendations:
How can IEC Officers control what people say or do when it comes to social media?  I feel that there are other contributing factors that need to be investigate to contact the vendor to get his side, talk with the former principal at Twin Lakes Elementary School to get her side and Brenda Yazzie need to account for her side of the story too.
Please do a proper and through investigation into this matter.

"Ms.Yazzie should have called me to get more information before sending these emails." Ms. Moffett
My Concern:
I wonder why Ms. Moffett didn't notify the IEC Officers and the IEC Committee on all the requests she denies.  Last year over $200,000 in JOM Funds was sent back to the Navajo Nation JOM.  The IEC Committee wasn't aware of all the denied JOM Request from the schools.
My Recommendation:
In the future I'm requesting that all denied request to be shared with the IEC Committee at the Budget & Regular Meetings so we know as a committee what is being denied. Also it resolve this issue from happening again.

" I also received a series of text message, which I felt, were also inappropriate" Ms. Moffett
My Concern:
I received text message from IEC Members regarding this matter too.  I did inform Ms.Moffett to bring the JOM funding request
forms from the Twin  Lakes Elementary to the June 01, 2017 IEC Budget Meeting.  Also to inform the IEC from the beginning process of when the request was made and when it was denied.
Why was the request denied and why IEC was not aware until after the fact?.
My Recommendation:
A.) There needs to be a clear process how funding request are process in a format step by step.
B.) IEC needs to put in place what technical assistance from the Program Manager to help schools who are denied to properly notify them & send them a notice what additional paper work is needed to get approval on their request.

" I am asking the IEC Officers to resolve this concern with Brenda Yazzie.  I am seeking a letter of apology from her and an assurance that this will not happen again." Ms. Moffett

My Recommendation:
 IEC Officers please investigate this matter with all parties; Vendor, Sandra Freeland and Brenda Yazzie to get their side of the stories then make a ethnical discussion to resolve this matter.

"On 6/01/17, I explained to the IEC why the proposal submitted by Twin Lake Elem. was not approved. I have also responded to Ms. Yazzie email dated 6/13/17." Ms. Moffett

My Concern:
I heard Ms. Moffett side during the June 01, 2017 IEC Budget Meeting.  I have questions into the matter of the deadline were given to all school Friday May 12, 2017.  So what happens when schools submit on the deadline does that mean the requests are denied?

My Recommendation
A.) The JOM Program needs to set up their own deadline May 1st to submit request.  This gives a chance for schools to resubmit additional paperwork in order to get request approve.  Also if there was no funds then school should be notify beforehand and not after the deadline.  Once funds are depleted then a notice should go the schools asap.

iec removal

Brenda Chicharello    Account Info ⌄    Go    Sign Out    Ha...

| Inbox | Contacts | Notepad | Calendar |

Switch to the newest Yahoo Mail

Compose

| Inbox | 999+ |
| Drafts | 34 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

Folders    Edit    Hide

+ New folder

Unwanted

Compose

Back to Search        Delete    Spam    Actions ⌄    A

**Fw: Re: Confidential Letter**        brenchic_99@yah.../Sent

Ⓑ                            Dec 5, 2017 at 2:13 PM
                                Print    Raw message

**Brenda Chicharello** <brenchic_99@yahoo.com
>
To:
Eleanor Thomas <eleanorthomas@nndode.org>
,
Jonas Yazzie <jonasyazzie@nndode.org>
Cc: Brenda Chica <brenchic_99@yahoo.com>

Eleanor Thomas,

Please review all of this email.  I was wrongful charge and remove during the
October 15, 2017 Regular IEC Meeting.  I am contesting this
wrongful action and I'm making you aware of this matter.  The IEC Bylaws
doesn't have removal process and no due process.  I would like you
to be aware of this action for I'm taking this matter to the Navajo Nation.

Brenda Chicharello

--- On Mon, 12/4/17, Monica Yazzie <monicayazzie@yahoo.com> wrote:

> From: Monica Yazzie <monicayazzie@yahoo.com>
> Subject: Re: Confidential Letter
> To: "Brenda Chicharello" <brenchic_99@yahoo.com>
> Cc: "Eleanor Thomas" <eleanorthomas@nndode.org>, "Jonas Yazzie"
<jonasyazzie@nndode.org>
> Date: Monday, December 4, 2017, 4:22 PM
> Good Afternoon
> Brenda, I will look at these documents, we do
> have a meeting tomorrow and I will let you know. The address
> under my name does not match the mailing address you tried
> sending it to?? I can see why I haven't received them.
> Box 3031 is not my address. I believe I would have received
> it with address under my name, so for FYI
> Monica
>
>
>
>
>
>
>
>
>
>
>                On Monday, December 4, 2017, 2:52:22
> PM MST, Brenda Chicharello <brenchic_99@yahoo.com>
> wrote:
>
>
>
>
>
>                MEMO
>
> TO: Monica Yazzie
>        IEC President
>
> FROM: Brenda
> Chicharello
>
> DATE: December 4, 2017
>
> Re; Confidential Letter
>



Finance your family's medical bills.
CareCredit
Learn More

xfinity
es crear
algo nuevo

PLAINTIFF'S EXHIBIT
No. **7**

>     NNJOM
>     be
>     nhr
>     hehs
> ------------------------------------------------------------------------------
> ------------------------------------------------------------------------------
> --------
> MESSAGE:
>
> Ms. Yazzie
>
> Please review my
> documents.  I do request that my IEC Membership to be
> reinstate immediately.
>
> Any
> questions please email me at brenchic_99@yahoo.com
>
>

Delete    Spam    Actions ⌄    Apply

iec removal

Brenda Chicharello | Account Info ∨ | Go

Inbox      Contacts      Notepad      Calendar

Switch to the newer Yahoo Mail

Compose

Back to Search      Delete   Spam   Actions ∨   A

| Inbox | 999+ |
| Drafts | 34 |

**IEC Membership Removal**                 brenchic_99@yah.../Sent

Sent
Archive
Spam
Trash

Folders    Edit  Hide

+ New folder

Unwanted

Compose


*Census 2020 Drawing*
**$500**
*Prepaid Mastercard*
Fill out your 2020 Census and submit your name, address, and confirmation number at NewMexico2020.com to receive your $20 prepaid Mastercard & be entered to win $500.

*Paid for by Independent NM Counties & Organizations*

Get a Quote

Ⓑ
                                          Dec 5, 2017 at 3:09 PM
                                          Print   Raw message

**Brenda Chicharello** <brenchic_99@yahoo.com
>
To:
Eleanor Thomas <eleanorthomas@nndode.org>
,
Jonas Yazzie <jonasyazzie@nndode.org>
Cc: Brenda Chica <brenchic_99@yahoo.com>,
Norman Begay <nmbegay@navajo-nsn.gov>
Bcc: Jonathan Hale <jonzcomet@yahoo.com>,
Amber Kanazbah Crotty <acrotty@navajo-nsn.g
ov>

MEMO

TO: Eleanor Thomas
      NNJOM Program Director

FROM: Brenda Chicharello
        Parent

DATE: December 5, 2017

Re; IEC Membership Removal

Cc: bc file
      HEHS
      nb

----------------------------------------------------------------------
----------------------------------------------------------------------
-----------------
MESSAGE:

Ms. Thomas,

I was removed from my IEC Membership on Sunday, October 15, 2017 at the IEC Regular Meeting at the Student Support Center.
I was notify prior to the meeting that I was going to be removed.  I was not made aware of any formal written complaints against me.
When the action item for removal of IEC Member the IEC President, Monica Yazzie told the committee that I would not meet with her
and the other IEC Officers to resolve matters.  Since I didn't meet with the IEC Officers I was misconduct to be removed and a force vote
was taken place.  I was not able to speak because the IEC Officers were speaking over me.  The other IEC Members wanted to know more
about what happen yet the IEC Officers kept saying no discussion.  A vote took place I was removed and the IEC President told me to leave.

I sent you a email on August 5, 2017 that Carmen Moffett, JOM Director did a report on Pro-Rate IEC Stipends without any documentation present this report
was not on the Agenda.  After her report Ms. Moffett made a recommendation to enforce the Pro-Rate, then a matter of seconds the IEC Committee went into a vote
several IEC Members voted and I didn't vote.  After the vote was done I told the IEC Members that were not to discuss or take actions on this Pro Rate
because it wasn't on the Agenda which violated the NM Open Meeting Act Law.  I tried 57 days to get this issue resolve from the IEC Officers didn't respond back to me
on my several emails I sent them.  Since I didn't hear back from you or the IEC Officers I had no other choice, but to file formal complaints to the New Mexico State Agencies.

**PLAINTIFF'S EXHIBIT No. 8**

EXHIBIT 7

After 5 days later the IEC Officers wanted to meet with them and I made the
IEC Officers aware that I could not meet with them, because of the Conflict of
Interest due to the fact
I already sent out several formal complaints.  Disclosure of any information
regarding my several complaints would compromise the privacy and
confidential circumstance.  I made that known to the IEC Officers.

I'm contesting my removal due to the fact that the IEC Bylaws doesn't have a
removal process and there's no due process too.
The IEC doesn't have authority to remove me and I was wrongful charge.  I
didn't receive due process which violated my civil rights.

Please look into this matter.

Delete      Spam      Actions ⌄      Apply

10/12/2020 (3,597 unread) - brenchic_99@yahoo.com - Yahoo Mail - Re: info

navajo nation jom

Account Info ⌄  Go

Inbox

Back to Search          Delete     Spam    Action: ⌄    Apply        ▷ ✕

| | |
|---|---|
| Inbox | 999+ |
| Drafts | 33 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

**Re: info**                                            brenchic_99@yah.../Inbox

**Dearman, Tony** <tony.dearman@bie.edu>          Apr 3, 2019 at 7:01 PM
To: Brenda Chicharello <brenchic_99@yahoo.com>
                                                      Print   Raw message

Folders     Edit  Hide

+ New folder
Unwanted

Hello Brenda,

Thank you for reaching out to me. I will put you in contact with my staff that work with JOM contracts tomorrow.

Tony L. Dearman
Director Bureau of Indian Education
Office: 202-208-6123
Cell: 202-570-5458
Fax: 202-208-3312

> On Apr 3, 2019, at 8:46 PM, Brenda Chicharello <brenchic_99@yahoo.com> wrote:
>
> Mr. Dearman,
>
>
> I'm a parent who served as a IEC parent for the Gallup McKinley County School. I was illegally removed in September 2017 without any due process
> I'm have been trying to get the Navajo Nation JOM Director to resolve the matter however she does not respond to my inquires that I've sent her. I have made
> the IEC members and officers aware that there's no removal process in the By-Laws and no where is it stated in the By-laws for due process.
>
> I am need of your assistance to help remedy my situation because my civil rights is violated because I have no due process for I really don't know why. At the time
> I was questioning the minute to minute pro-rate that the JOM Director, Carmen Moffett was trying to implement without any documentation to say its allowable from
> the Navajo Nation JOM, the BiA and the 25 CFR which she didn't bring forward to the IEC Members
>
> I know the former and the present GIMC Superintendents have been trying to eliminate the JOM Program by saying it's the GIMC Board is the true IEC not the parents.
>
> Please review link below:
>
> https://www.daily-times.com/story/news/education/2018/04/09/ccsd-explore-options-maintaining-jom-contract/494873002/
>
> I've advocated for the JOM Program for 3 years from the former GIMC Superintendent trying to do away with the JOM Program. The only reason why I did that was for our
> neglected Native American Students who were not using the services to fit their needs. Plus the District could care less for anything to due with Native American Cultural and Language.
>
> I'm need of your help to resolve this matter.
>
> The best communication works for me is thru email my email address is brenchic_99@yahoo.com
>
> I'll be waiting to hear back from you.
>
> Thank you,
>
> Brenda Chicharello

Delete     Spam    Action: ⌄    Apply

PLAINTIFF'S EXHIBIT
No. 9

navajo nation jom                                        Account Info ⌄    Go

Inbox

Back to Search              Delete      Spam    Action ⌄   Apply

Inbox            999+       **RE: info**                              brenchic_99@yah.../Inbox

Drafts           33

Sent                                                          Apr 4, 2019 at 10:57 AM

Archive                     **Barnett, Angela** <angela.barnett1@bie.edu>      Print   Raw message

Spam                        To: Brenda Chicharello <brenchic_99@yahoo.com>

Trash                       Cc: Lesky, Maureen <maureen.lesky@bie.edu>,
                            Dearman, Tony <tony.dearman@bie.edu>

Folders      Edit  Hide     Ms. Chicharello,

+ New folder                Thank you for your email regarding the Gallup McKinley County School JOM program. The by-laws
                            should have a section for grievance procedures for complaints from Indian students, parents,
Unwanted                    community members and tribal representatives. The steps should be a grievance is in writing to the
                            local Indian Education Committee (IEC) for investigative review and action. The IEC should investigate,
                            document and submit the findings to the complainant. If the complainant is not satisfied with the
                            findings then it shall be forwarded to the JOM Coordinator. The JOM Coordinator shall schedule a
                            meeting with the IEC Chairperson and school official. A grievance committee consisting of a JOM staff
                            member, committee member and a local school administrator will review the complaint, investigate
                            document(s), findings and/or recommendations. The JOM Coordinator will contact the complainant to
                            present the committee's disposition to see if it resolves the complaint. If the complainant is not
                            satisfied, the JOM Coordinator will forward the complaint with all investigative documents, findings
                            and/or recommendations to the Education Director at the Tribe. The findings of the Education
                            Director shall be final.

                            The JOM program is a unique program who is parent lead and decisions are centered around the IEC.
                            The Bureau of Indian Affairs and The Bureau of Indian Education does not get involved with the
                            decisions that are made by the IEC, this is why we strongly recommend the IEC adopts a grievance
                            policy to resolve complaints. If there is no grievance policy in place then I would recommend to use
                            what the Tribe has in place or use the above that is outlined. However keep in mind, the final decision
                            stops at the Education Director of the Tribe where the funds are disbursed to the school(s).

                            As for eliminating the JOM program at the school, there has to be a partnership between the
                            Contractor or Grantee (Navajo Nation) and the Sub-contractor (Gallup McKinley County School). The
                            school has to submit their documents to the Navajo Nation as their intent to contract for the next
                            year. If the school does not turn in documents for the next school term then the Tribe has nothing to
                            sub-contract with the school. There are schools out there who do not want a JOM program at their
                            school for various reason and the Tribe can not force them to sub-contract so the Tribe will take back
                            the program and administer them by getting a IEC committee formed that consist of the parents of
                            the children who attend the school. This way the children who are eligible to receive JOM can
                            continue to benefit from the program.

                            As for the pro-rate you talked about, I would recommend to contact the Navajo Nation's Self-
                            Determination Specialist/Awarding Official, Shawna DuBoise (505) 863-8228 and/or the Awarding
                            Officials Technical Representative, Marilyn Holliday (505) 368-3415 to express the issue you have with
                            how this is being conducted. Shawna is the Awarding Official for BIA who acts on behalf of the
                            Secretary to enter into a government to government contract with the Navajo Nation and Marilyn for
                            BIE is her technical representative for program specific questions. These two ladies are the ones who
                            will go out and review/monitor the JOM program at the Tribe to ensure compliance. Keep in mind
                            when a review is conducted and the contract is with the Navajo Nation they will only go to the Navajo
                            Nation not to the schools. The review at the school level is administered by the Navajo Nation JOM
                            program.

                            I hope this helps answer your questions. Please let me know if you have any other questions.

                            Angela J. Barnett
                            Program Specialist, JOM

                            Bureau of Indian Education
                            200 NW 4th Street, Suite 4049
                            Oklahoma City, OK 73102
                            Phone: (405) 605-6051 ext. 302
                            Mobile: (703) 817-5879

**Census 2020 Drawing $500 Prepaid Mastercard®**

Fill out your 2020
Census and submit
your name, address,
and confirmation
number at
NewMexico2020.org
to receive your $20
prepaid Mastercard
& be entered to
win $500.

Virtual Account is issued by MetaBank®
N.A. Member FDIC, pursuant to license
by Master Card International
Incorporated. Mastercard is a registered
trademark, and the circles design is a
trademark of Mastercard International
Incorporated. No cash access or
recurring payments. Can be used where
Debit Mastercard is accepted for online,
phone/mail orders, or in stores that
accept mobile wallet. Valid for up to 12
months, funds do not expire and may be
available after the expiration date. Fees
may apply. Terms and conditions apply.

*Paid for by Independent
NM Counties & Organizations*

**PLAINTIFF'S EXHIBIT
No. 10**

ANGELA.BARNETT@bie.edu

From: Dearman, Tony
Sent: Thursday, April 4, 2019 8:13 AM
To: Brenda Chicharello
Cc: Barnett, Angela; Lesky, Maureen
Subject: RE: info

Hello Brenda,

I have included Angela Barnett in the email. Angela works with our JOM Programs. She may be able to
help answer questions you have.

-----Original Message-----
From: Brenda Chicharello <brenchic_99@yahoo.com>
Sent: Wednesday, April 3, 2019 8:46 PM
To: Dearman, Tony <Tony.Dearman@BIE.EDU>
Cc: Brenda Chica <brenchic_99@yahoo.com>
Subject: info

Mr. Dearman,


I'm a parent who served as a IEC parent for the Gallup McKinley County School. I was illegally
removed in September 2017 without any due process I'm have been trying to get the Navajo Nation
JOM Director to resolve the matter however she does not respond to my inquires that I've sent her. I
have made the IEC members and officers aware that there's no removal process in the By-Laws and
no where is it stated in the By-laws for due process.

I am need of your assistance to help remedy my situation because my civil rights is violated because I
have no due process for I really don't know why. At the time I was questioning the minute to minute
pro-rate that the JOM Director, Carmen Moffett was trying to implement without any documentation
to say its allowable from the Navajo Nation JOM, the BiA and the 25 CFR which she didn't bring
forward to the IEC Members

I know the former and the present GIMC Superintendents have been trying to eliminate the JOM
Program by saying it's the GIMC Board is the true IEC not the parents.

Please review link below:

https://www.daily-times.com/story/news/education/2018/04/09/ccsd-explore-options-maintaining-
jom-contract/494873002/

I've advocated for the JOM Program for 3 years from the former GIMC Superintendent trying to do
away with the JOM Program. The only reason why I did that was for our neglected Native American
Students who were not using the services to fit their needs. Plus the District could care less for
anything to due with Native American Cultural and Language.

I'm need of your help to resolve this matter.

The best communication works for me is thru email my email address is brenchic_99@yahoo.com

I'll be waiting to hear back from you.

Thank you,

Brenda Chicharello


Delete      Spam      Action: ⌄      Apply

navajo nation jom                                    Account Info ⌄   Go

Inbox

Back to Search              Delete      Spam    Action: ⌄   Apply                ▷ ✕

| | |
|---|---|
| Inbox | 999+ |
| Drafts | 33 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

Folders        Edit  Hide

+ New folder

Unwanted

**RE: info**                                        brenchic_99@yah.../Sent

Ⓑ

                                                    Apr 4, 2019 at 4:43 PM
                                                    Print   Raw message

**Brenda Chicharello** <brenchic_99@yahoo.com>
To: AngelaBarnett <angela.barnett1@bie.edu>,
Tony Dearman <tony.dearman@bie.edu>
Cc: MaureenLesky <maureen.lesky@bie.edu>,
Brenda Chica <brenchic_99@yahoo.com>,
Eleanor Thomas <eleanorthomas@nndode.org>,
Jonathan Nez <jonathannez@navajo-nsn.gov>

Hello Everyone,

The BIA holds the Trust Responsibility.  The investigation part on Angela Barnett is far stretched when she had not pick up the telephone to call
to see what happen at the school district and even request the 2017-2018 GIMC JOM Sub-Contract to review to see this so called removal process is not in the IEC By-laws which governs the IEC.

The BIA should be aware of IEC members who are illegally removed because the parent civil rights are being violated without due process.  I would like to inform you that it doesn't stop at the Education Director of the Tribe, because I have statute of limitation to filed suit in federal court for violation of my civil rights without due process.

The BIE just finished a federal lawsuit with the Havasupai Tribe.

The GIMC JOM Program has been monitor because of the 2012-2015 mismanagement of the GMCS Administration staff who failed to manage the GIMC District JOM Program properly which the Gallup Independent Newspaper has blamed on the IEC parents

I have tried to resolve this matter with the BIA didn't help me I have no other choices to take this to the Federal Court.  The email will be discovery as exhibit evidence and this will be a legal ligation.

Brenda Chicharello

Chron:
Cc; bc file
    Field Solicitor
    NNJOM
    NNOPVP

------------------------------------------
On Thu, 4/4/19, Barnett, Angela <ANGELA.BARNETT1@BIE.EDU> wrote:

Subject: RE: info
To: "Brenda Chicharello" <brenchic_99@yahoo.com>
Cc: "Lesky, Maureen" <Maureen.Lesky@BIE.EDU>, "Dearman, Tony" <Tony.Dearman@BIE.EDU>
Date: Thursday, April 4, 2019, 9:57 AM

Ms. Chicharello,

Thank you for your email
regarding the Gallup McKinley County School JOM program.
The by-laws should have a section for grievance procedures
for complaints from Indian students, parents, community
members and tribal representatives.  The steps should be a
grievance is in writing to the local Indian Education
Committee (IEC) for investigative review and action.  The
IEC should investigate, document and submit the findings to
the complainant.  If the complainant is not satisfied with
the findings then it shall be forwarded to the JOM

navajo nation jom

Account Info   Go

Inbox

Back to Search        Delete    Spam    Action: ⌄    Apply

▷ ✕

| | |
|---|---|
| Inbox | 999+ |
| Drafts | 33 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

Folders    Edit   Hide

+ New folder

Unwanted

## Meeting regarding JOM Membership

brenchic_99@yah.../Sent

**Brenda Chicharello** <brenchic_99@yahoo.com>
To: Jonathan Nez <jonathannez@navajo-nsn.gov>
Cc: Brenda Chica <brenchic_99@yahoo.com>

Apr 1, 2019 at 9:57 AM

Print   Raw message

MEMO

TO:Honorable Jonathan Nez
    Navajo Nation President

FROM: Brenda Chicharello
    Parent

DATE: April 1, 2019

TIME: 9:40 am

Re; Meeting regarding JOM Membership
-----------------------------------------------------------------------------------------------
----------------------------------------------------------
MESSAGE:

Good Moring Honorable Mr. Nez,

I meet with you at the Supreme Court Justice Day, I spoke with you briefly about my situation that I was illegally removed from
the Gallup McKinley County Indian Education Committee (IEC). I was not given no reason and I did try to resolve the matter with IEC and
the Navajo Nation JOM Director, Eleanore which she has not respond back to my inquires. I am need of your assistance to resolve this matter.
You can contact me thru email at brenchic_99@yahoo.com. Thank you for your help and support.

Respectfully,


Brenda Chicharello
Parent

Delete    Spam    Action: ⌄    Apply

PLAINTIFF'S EXHIBIT

No. __11__

navajo nation jom                                          Account Info ▾    Go

**Inbox**

Back to Search              Delete    Spam    Action: ▾    Apply

**Fw: Procurement**                                    brenchic_99@yah.../Inbox

Ⓑ

                                                        May 16, 2018 at 7:33 PM
                                                        Print    Raw message

**Brenda Chicharello** <brenchic_99@yahoo.com>
To: Jonathan Hale <jonzcomet@yahoo.com>,
Amber Kanazbah Crotty <acrotty@navajo-nsn.gov>
Cc: Brenda Chica <brenchic_99@yahoo.com>

Honorable Mr. Hale and Mrs. Crotty,

I'm forwarding you this email to show that I did meet with Mr. Schneider to review GMCS JOM By-laws that he review
in his office and did tell me that the IEC could not remove IEC Members from the IEC, because it was not stated in their IEC By-laws that govern them as of August 2017.
Since it was not stated in the IEC By-laws then it can not be enforce and there's is no due process for removal stated in the IEC By-laws either.

I did ask about the New Mexico Meetings Act if IEC need to follow it?
Also, I did ask if IEC Members are state employees because the J. Hanks and Mike Hyatt came to the IEC Meeting January 6, 2017 both of them telling the IEC Members that
we are State Employees?

Mr. Schneider reviewed the GMCS JOM Subcontract Agreement and gave his opinion in the previous email below.

Please can you follow up with this to help me get back my IEC Membership that I was illegally removed.

Thank you,

Brenda Chicharello

--- On Fri, 11/3/17, Chris Schneider <cschneider@nndoj.org> wrote:

> From: Chris Schneider <cschneider@nndoj.org>
> Subject: Procurement
> To: "brenchic_99@yahoo.com" <brenchic_99@yahoo.com>
> Date: Friday, November 3, 2017, 3:40 PM
>
>
>
>
>
>
>
>
> Good afternoon,
> Brenda,
>
>
> It looks as though
> the McKinley County JOM contract intends for the NM state
> procurement policies to be followed.
>
>
> Also, when I
> reviewed the Internal Revenue Code, it appears that the
> designation as an elected official/officer is intended only
> for IRS purposes.  Meaning, that it distinguishes
> independent contractors from other types of employment
> classifications.
>
>

**Census 2020 Drawing $500 Prepaid Mastercard®**

Fill out your 2020 Census and submit your name, address, and confirmation number at NewMexico2020.org to receive your $20 prepaid Mastercard & be entered to win $500.

Virtual Account is issued by MetaBank® N.A., Member FDIC, pursuant to license by Mastercard International Incorporated. Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated. No cash access or recurring payments. Can be used where Debit Mastercard is accepted for online purchases/mail orders, or in stores that accept mobile wallet. Valid for up to 12 monthly; funds do not expire and may be available after the expiration date. Fees may apply. Terms and conditions apply.

*Paid for by Independent NM Counties & Organizations*

**PLAINTIFF'S EXHIBIT**
**No.  12**

> Chris.
>
>
> Christopher J.
> Schneider, Attorney
> Human Services and
> Government Unit
> Navajo Nation
> Department of Justice
> P.O. Box
> 2010
> Window Rock,
> Navajo Nation (Arizona) 86515
> Phone
> 928.871.6935
> Fax
> 928.871.6177
>
>
> If this e-mail
> message concerns legal or related matters, this
> communication and any attachments are attorney-client
> privileged and confidential, and intended for use
>  only by the individual or entity named above as the
> intended recipient. If you are not the intended recipient,
> reading, distributing or copying this communication is
> strictly prohibited. If you have received this communication
> in error, please immediately
>  notify the sender and delete this e-mail and any
> attachments. Thank you.
>
>
>
>

Delete     Spam     Action: ∨     Apply



Proposed Agenda
23rd NAVAJO NATION COUNCIL
NAABIK'ÍYÁTI' COMMITTEE SPECIAL MEETING

Navajo Nation Council Chambers
Window Rock, Navajo Nation (AZ)

December 4, 2017 - 9:00 AM

*PRESIDING CHAIR: Honorable LoRenzo C. Bates, Speaker, Navajo Nation Council*

| Hon. LoRenzo C. Bates, Speaker | | | | |
|---|---|---|---|---|
| BUDGET & FINANCE COMMITTEE | RESOURCES & DEVELOPMENT COM. | HEALTH, EDUCATION & HUMAN SERVICES COM | LAW AND ORDER COMMITTEE | |
| Hon. Seth Damon (C) | Hon. Alton Joe Shepherd (C) | Hon. Jonathan L. Hale (C) | Hon. Edmund Yazzie (C) | |
| Hon. Dwight Witherspoon (VC) | Hon. Benjamin L. Bennett (VC) | Hon. Norman M. Begay (VC) | Hon. Raymond Smith, Jr. (VC) | |
| Hon. Tom T. Chee | Hon. Davis Filfred | Hon. Steven Begay | Hon. Kee Allen Begay, Jr. | |
| Hon. Lee Jack, Sr. | Hon. Leonard H. Pete | Hon. Nelson S. BeGaye | Hon. Herman M. Daniels | |
| Hon. Tuchoney Slim, Jr. | Hon. Jonathan Perry | Hon. Nathaniel Brown | Hon. Otto Tso | |
| Hon. Leonard Tsosie | Hon. Walter Phelps | Hon. Amber Kanazbah Crotty | | |

1. CALL MEETING TO ORDER; ROLL CALL; INVOCATION; ANNOUNCEMENTS

2. RECOGNIZE GUESTS AND VISITING OFFICIALS

3. REVIEW AND ADOPT THE AGENDA:

   (m)                    (s)                    (v)

4. REVIEW AND ADOPT THE JOURNALS:

   October 12, 2017; October 16, 2017; October 26, 2017

   (m)                    (s)                    (v)

Brenda G. Chicharello
PO Box 2774
Gallup, New Mexico 87305

August 07, 2017

**Eleanor G. Thomas, Program Manager**
**Jonas Yazzie, Senior Education Specialist**
The Navajo Nation Department of Dine' Education
JOHNSON-O'MALLEY PROGRAM
P.O. Box 1950
Window Rock, Arizona 86515
(928) 871-6678/7458 Fax: (928) 871-7464

Dear Ms. Eleanor G. Thomas, Program Manager and
      Mr. Jonas Yazzie, Senior Education Specialist

I came into your office this afternoon to speak with both of you regarding the IEC Pro-Rate. Per our
conversation we had together in Mr. Yazzie's Office I brought my concerns of Carmen Moffett's Report
that she voluntarily went to the Gallup McKinley County Business Office soliciting Pro-Rate on Non-
Contract Employee's such as IEC Members prior to August 5, 2017 IEC Regular Meeting.
Mr. Yazzie said, "why is Ms. Moffett doing this without the IEC officially telling her to do so?"
I did ask both of you if the Navajo Nation JOM Program has any type of Pro-Rate that exist for
employment?
Mr. Yazzie said, "that the only Pro-Rate is on salary when an employee work two different job titles then
Pro-Rate can be applied other than that there's no other Pro-Rate I know of."
Ms. Thomas ask, "why is IEC considering Pro-Rate when there's no findings to require it?"
I said "not sure, IEC just went through Negotiation in June 2017 and I don't know why this wasn't
brought up then. It seems like this Pro-Rate is after the fact."
Mr. Yazzie, said "that IEC By-laws is what hold up the Subcontractor Application last year and now with
this changes to the IEC By-laws will delay the application process."
Ms. Thomas said "that during the Negotiation everything was agreed on and things will have to stay as is
because the application is now in process. I will get hold of Ms. Moffett to tell her that and ask her why
now? This Pro-Rate can be applied in next year application. We finished our conversation and I left the
NNJOM Department Office.

 I did CC Copy both of you my emailed sent on Saturday, August 05, 2017 at 3:28 pm to the IEC Officers
and Carmen Moffett. I attached a copy of this email to this letter.

Thank you for meeting with me.

Sincerely,

Brenda G. Chicharello
Parent

Brenda G. Chicharello
PO Box 2774
Gallup, New Mexico 87305

August 27, 2017

**Eleanor G. Thomas, Program Manager**
**Jonas Yazzie, Senior Education Specialist**
The Navajo Nation Department of Dine' Education
JOHNSON-O'MALLEY PROGRAM
P.O. Box 1950
Window Rock, Arizona 86515
(928) 871-6678/7458 Fax: (928) 871-7464

Dear Ms. Eleanor G. Thomas, Program Manager and
      Mr. Jonas Yazzie, Senior Education Specialist

I'm following up with both of you regarding our meeting August 07, 2017. I was checking in with the status of what happen after I left your office. Ms. Thomas did you contact Carmen Moffett, Director of JOM to find out why she voluntarily went to the Gallup McKinley County Business Office Soliciting Pro-rate on the Indian Education Committee members?

Since Ms. Moffett went to the District Business Office soliciting Pro-Rate I'm questioning if this Pro-Rate is allowable from the District?
 I'm questioning for justification to see if this Pro-Rate does exist then I would like see Ms. Moffett to provide evidence by showing District policies documentation that would allow this Pro-Rate?

I look forward to hearing back from both of you.

Sincerely,

*Brenda G. Chicharello*
Brenda G. Chicharello

Cc: bc file

Brenda G. Chicharello
PO BOX 2774
Gallup, New Mexico 87305

US District Court
District of New Mexico
Pete V. Domenici U.S. Courthouse
333 Lomas Blvd NW, Suite 270
Albuquerque, NM 87102